## WORK BROTHERS & COMPANY, Appellees, v. H. McCOY, Defendant, and L. M. LORD, Appellant.

1. **Pleading**: ANSWER TO AMENDED PETITION: MOTION TO STRIKE. So much of the answer to an amended petition as sets up matters which are put in issue by the answer to the original petition, or states a mere conclusion of law, may properly be stricken out on motion.

2. **Conversion**: PROPERTY TAKEN BY RECEIVER UNDER ORDER OF COURT. Where, upon the application of the plaintiff, in an action by attachment, a receiver for the attached property was appointed by the court, *held*, that the taking of the property by the receiver, in the absence of any showing that the property or its proceeds was not held by him for whoever might be found entitled to it, did not amount to a conversion thereof by the plaintiff.

3. **Conspiracy**: DECLARATIONS OF CO-CONSPIRATORS: ORDER OF TESTIMONY. While the general rule is that a *prima facie* case of conspiracy must be made before evidence of the acts and declarations of the alleged conspirators can be introduced, it is proper to permit such evidence to be first introduced, where the plaintiff promises, in the further prosecution of the case, to introduce evidence to *prima facie* establish a conspiracy, and the court instructs the jury that the evidence first introduced is not to be considered unless a conspiracy is proved.

4. **Conspiracy to Obtain Credit**: EVIDENCE. In an action for conspiracy to obtain credit, the plaintiffs are not, in proving the conspiracy, limited to facts known to them at the time of extending credit.

5. ———: ACTION FOR PRICE OF GOODS: EVIDENCE: ADMISSIONS. Where, in an action for goods procured to be sold to one of two persons through their alleged conspiracy to obtain credit therefor, the question of their partnership was also in issue, *held*, that the admission of the one to whom the goods were sold that a copy of the account sued on was correct, was admissible against the other party, either as co-conspirator or copartner, and, after such admission, such copy was admissible in evidence.

6. ———: ———: ATTACHMENT: RIGHT TO PERSONAL JUDGMENT. Where M. and L. conspired together to procure goods to be sold by the plaintiffs to M. upon credit, and, in furtherance of the scheme, they transferred the goods to L. before the bills were due, and the plaintiffs sued them both for the price, and attached the goods, *held*, that the court properly instructed the jury that, if they found that a

conspiracy was formed and carried out as alleged, they should find for the plaintiffs against both of the defendants, notwithstanding the attached goods may have been worth more than the plaintiffs' claim.

7. ———: SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT. The evidence showed that L. sold a stock of goods to M., whom he knew to be insolvent, on credit, and without security; that M. then added to the stock a large quantity of goods purchased of the plaintiffs on the faith of his ownership of such stock unincumbered; that, before the additional goods were paid for, and with knowledge of the facts, L. made a loan to M., and then took a mortgage upon the whole stock. *Held*, that a verdict finding that there was a conspiracy to defraud the plaintiffs was not without evidence to support it.

*Appeal from Taylor District Court.*—HON. J. W. HARVEY, Judge.

TUESDAY, JANUARY 24, 1893.

ACTION to recover four hundred and twelve dollars on account for goods sold and delivered November 15, 1889. The plaintiffs seek to charge the defendants with said goods upon two grounds, namely, that they were sold to them as a copartnership, and that they were purchased of the plaintiffs by McCoy on credit, in pursuance of a conspiracy between the defendants to defraud the plaintiffs and others. The conspiracy charged is that Lord, being the owner of a stock of merchandise, and the lot and building where the same was kept, in Gravity, Iowa, agreed with McCoy, who was in his employ as manager of said mercantile business, and whom he knew to be insolvent, to make a pretended sale of said merchandise and real estate to him at the price of four thousand dollars. That, with said property as a basis for obtaining credit, McCoy should purchase goods on time, and add the same to said stock, and before the bills therefor became due, execute a chattel mortgage to Lord on the entire stock, including such additions, to secure said four thousand dollars. That, in pursuance of said conspiracy, McCoy purchased about three thousand dollars' worth of goods

from wholesale dealers, including the plaintiffs, and gave Lord a mortgage as agreed. That Lord took the property under the mortgage, sold it at public auction, and bid it in at three thousand and five hundred dollars, and that four thousand dollars was largely more than the value of the property sold by Lord to McCoy. There was no appearance for McCoy. The defendant, Lord, answered, admitting that he was conducting a mercantile business, and that McCoy was his manager, as alleged, and denying every other allegation in the amended petition. He denied especially that he was in partnership with McCoy, and the alleged conspiracy, and set up, by way of counterclaim on the attachment bond, a claim for damages for wrongfully suing out the attachment in this action against his property.

The plaintiffs filed a third amendment setting out in detail the fraud intended by the defendants. In answering this amendment the defendant alleged that the chattel mortgage was taken in good faith to secure a *bona fide* debt, and that it was foreclosed in the usual way; that the plaintiffs knew of the sale, but refused to bid, or to cause the goods to sell for more than three thousand and five hundred dollars, and that the defendant's only object in taking and foreclosing the mortgage and buying in the goods was to secure his debt. He further alleged that the allegations of the petition and amendments did not entitle the plaintiffs to any personal judgment against him. He set up as a further counterclaim that a receiver had been appointed at the instance of the plaintiffs and others to take charge of the goods attached by the plaintiffs, and that by that action the defendant has been damaged three thousand dollars, by the wrongful conversion of said goods. On motion of the plaintiffs these parts of the answer were stricken out. The motion was overruled as to the further allegation in the answer that the levy of the plaintiffs' attachment was excessive,

for that it was levied upon all the goods in the store, amounting to two thousand and eight hundred dollars.

Upon these issues the case was tried to a jury, and a verdict for the plaintiffs for the amount claimed, with answers to certain special findings, returned. The jury found specially that the defendants were not in partnership; that they did enter into a conspiracy as alleged; that the attachment was not wrongfully sued out; and that the defendant, Lord, took the chattel mortgage from McCoy with intent to defraud, hinder and delay creditors of McCoy. Judgment was entered upon the verdict, from which the defendant, Lord, appeals.—*Affirmed.*

*Thos. L. Maxwell* and *G. B. Haddock,* for appellant.

*Flick & Thomas* and *A. J. Johnson,* for appellees.

GIVEN, J.—I. The appellant's first complaint is of the ruling striking parts of his answer to the amended petition. That he took the chattel mortgage in good faith was already in issue under the denials in the answer. His good faith in taking and foreclosing the mortgage was only questioned upon the ground that there was a conspiracy. If there was no conspiracy as charged, then the mortgage and its foreclosure was valid. The foreclosure was stated to show the consummation of the alleged conspiracy, and not that it was void because of any irregularities. The plaintiffs' right to a personal judgment depended upon whether the partnership or the conspiracy was proved. It was put in issue by the petition and first and second amendments and the answer thereto. The allegation stricken out is a statement of a conclusion of law, and not of facts.

1. PLEADING: answer to amended petition: motion to strike.

II. The statement of a further counterclaim on

account of the receiver taking the property shows that
the receiver was appointed by the court.

**2. Conversion:** property taken by receiver under order of court. That a receiver was appointed by the court upon the application of the plaintiffs and others is no ground for recovering damages.   In the absence of an allegation to the contrary, we must presume that the property, or the proceeds thereof if disposed of as perishable, is in the hands of the court or its receiver, for whoever may be found entitled to it.   The receiver's taking the property was no conversion of it.   There was no error in the ruling.

III.   The court admitted, over the appellant's objections, certain declarations of McCoy, and certain letters and documents written by him.

**3. Conspiracy:** declarations of co-conspirators: order of testimony. Most of these were admitted under the issue of conspiracy.   The appellant contends that there was not even *prima facie* evidence of a conspiracy, and hence the evidence was inadmissible.   In *State v. Grant*, 86 Iowa, 216, this court held as follows:   "The general rule undoubtedly is that a *prima facie* case of conspiracy must be made before evidence of the acts and declarations of the alleged conspirators can be introduced.   But it has been found necessary to modify this rule, and it is now quite common to permit evidence of acts and declarations to be first introduced.   This would certainly be proper where, as in the case at bar, the state promised in the further progress of the trial to introduce evidence to *prima facie* establish a conspiracy.   1 Greenleaf on Evidence, 111;   2 Wharton on Criminal Law [8 Ed.], 1401;   4 Am. and Eng. Encyclopedia of Law, pages 635, 636.   The matter of requiring *prima facie* proof of the conspiracy prior to the admission of evidence of acts and declarations of the conspirators is a matter largely in the discretion of the court."   As said in *Miller v. Dayton*, 57 Iowa, 423:   "The proof of the combination

must, of necessity, almost always be extracted from circumstances connected with the transaction."

The declarations and documents admitted are somewhat numerous, and it is not practicable that we here discuss them in detail. It is sufficient to say that, in view of the evidence that preceded, we think this evidence was properly admitted under the rule requiring *prima facie* evidence of conspiracy to be first introduced. The court instructed specifically that, unless the jury found the conspiracy they should not consider this evidence as against the appellant, and that the conspiracy could not be established by the acts or declarations of McCoy alone.

IV. Among the documents admitted as above was a sworn statement of assets and liabilities made by McCoy to a firm in St. Joseph, Missouri, for the purpose of obtaining credit. The contention is that this statement was not to the plaintiffs, and not known to them; that they were not influenced by it in giving credit to McCoy, and therefore it was immaterial. The plaintiffs were not limited to facts known to them at the time of extending credit in proving the conspiracy; indeed, if they had then known there was a conspiracy, it is not probable any credit would have been given. The admissibility of this statement did not depend upon whether the plaintiffs knew of it or were influenced by it at the time of giving credit; it was admissible under the issue of conspiracy.

1. CONSPIRACY to obtain credit: evidence.

V. Mr. Thomas was permitted to testify that McCoy admitted the account sued upon to be correct. The appellant contends that this was improperly admitted as against him. The issue of copartnership was submitted to the jury, and, clearly, if a copartnership had been found, this admission would be admissible against the appellant. Therefore there was no error in admitting

5. ——: action for price of goods: evidence: admissions.

it.  The question of conspiracy was also submitted.  It was McCoy who ordered the goods, and knew what was received.  If they were received in furtherance of the alleged conspiracy, McCoy's declarations concerning them were admissible against both, and were evidence of the amount the plaintiffs were entitled to recover. When a copy of the book of original entries is admitted to be correct, it is not required that the books be produced; the copy, by virtue of the admission, becomes competent evidence.  We have examined the appellant's contentions on this branch of the case in detail, and do not find any prejudicial errors in admitting evidence.

VI.  The court instructed the jury that, if they found that a conspiracy was formed and carried out as alleged, they should find for the plaintiffs. The appellant contends that the conspiracy must have resulted in damage to the appellees to entitle them to recover, and that this element was omitted from the instructions; that in fact the appellees were not damaged by the alleged conspiracy, for that they held largely more property under their attachment than was required to pay their claim; also that they were not damaged by the conspiracy, for that they had no interest in or lien upon the goods at the time that they were mortgaged to, or at the time they were purchased by, the appellant at the foreclosure sale, their debt not then being due, and no attachment having been levied.

6. ——: ——: attachment: right to personal judgment.

The appellant cites and largely relies upon *Adler v. Fenton*, 24 How. (U. S.) 407.  In that case the plaintiffs, Fenton *et al.*, had sold goods to Adler & Scheff on their own credit, and, after receiving the goods, Adler & Scheff conspired with their codefendants to conceal their property from their creditors by making an assignment thereof to their codefendants. Plaintiffs attached sufficient property of Adler & Scheff

to satisfy their debt, and then brought this action, charging that by means of said fraudulent acts they "suffered vexation and expense, and finally incurred the loss of their debt." The court, in conclusion, held as follows: "In the absence of special legislation, we may safely affirm that a general creditor can not bring an action on the case against his debtor, or against those combining and colluding with him to make dispositions of his property, although the object of those dispositions be to hinder, delay and defraud creditors." The distinction between that case and this is apparent. In that, the defendants had not conspired, as in this, to fraudulently induce the plaintiffs to extend credit. The wrong complained of was the assignment of the property over which Adler & Scheff had the full right of disposition. The wrong here complained of is obtaining the plaintiff's goods on credit to McCoy, who was insolvent, by means of the conspiracy. In *Adler's Case* the court says: "To enable the plaintiffs to sustain an action on the case like the present, it must be shown that the defendants have done some wrong; that is, have violated some right of theirs, and that damage has resulted as a direct and proximate consequence from the commission of that wrong." The plaintiffs having no rights in the property assigned, the assignment violated no right of theirs. In this case it was the right of the plaintiffs not to be fraudulently deceived as to the solvency of McCoy, and it is this right that was violated by the conspiracy. By conspiring to get the property of the plaintiffs in the manner alleged, Lord, as well as McCoy, became primarily liable. The correctness of the account sued upon was not disputed in the evidence. There was no conflict as to the amount, and the court had the right to accept the undisputed fact in giving instructions. That the plaintiffs have attached sufficient property to satisfy their debt is no reason why they are not entitled to personal

judgment against the appellant.   He is, as we have
said, primarily liable, and subject to a judgment, the
same as McCoy.   The property attached is claimed by
the appellant, and whether it is his or McCoy's, it is
alike subject to be applied upon the judgments against
them.   A payment by either, or by the application of
the property of either or both, will be a satisfaction of
the judgments, so far as the plaintiffs are concerned.
We have seen that the plaintiffs' right to recover does
not rest on any rights they had in the property mort-
gaged to the appellant, but because of the fraudulent
conspiracy by which the plaintiffs were induced to part
with their goods.   Our statute authorized the bringing
of this action as it was brought, though the debt was
not then due, and the fact that it was not then due
affords no protection to the appellant.   We see no
error in instructions 9 and 10, complained of.

VII.   The appellant complains of the following
instruction:   "And you are further instructed in this
connection that the alleged conspiracy can not be estab-
lished on what the said McCoy might have said, done,
or written alone, but there must be other evidence,
which may be shown by facts and circumstances show-
ing the conspiracy, before what the said McCoy might
have said, done, or written can be considered by you as
evidence against said Lord."   The complaint is against
the use of the word "alone."   As it takes two or more
to form a conspiracy, the words or acts of one will not
establish it.   There must be other evidence than that
of McCoy, showing that Lord was a party to the
alleged conspiracy.   We see no error in this instruc-
tion.

VIII.   The appellant's remaining contention is
that the court erred in overruling his motion for a new
7. ——: suffici-     trial as to the third, fourth, and fifth
ency of evi-
dence to sup-      grounds thereof, namely, that the verdict
port verdict.     is contrary to the law and evidence.   The

verdict is based alone upon the finding of the alleged conspiracy. If it was for this court to determine whether the alleged conspiracy was established, we might hesitate to find that it was. That question was fairly submitted to the jury, and we can not say, in the face of this record, that their finding is without support in the evidence. While we do not attempt a discussion of the evidence, we mention, as among the facts supporting the verdict, the following: The appellant sold the property to McCoy, whom he knew to be insolvent, on credit, and without any security. He knew the necessity of security then as well as he did afterwards, but withheld taking it until McCoy had added largely to the stock merchandise purchased on credit. With some knowledge, at least, of these additions, the appellant increased the debt to him by a loan of five hundred dollars to McCoy, and then took a mortgage upon the whole stock. If the jury believed, as they had a right to, that the transaction was to get the goods purchased from the plaintiffs and others, and make them the property of the appellant, they were warranted in their finding and verdict.

Our conclusion is that the judgment of the district court should be AFFIRMED.