A. T. JOLLY, Appellee, v. J. E. DOOLITTLE et al.

**TRIAL:** Verdicts—Special Findings—Which Must Yield. A special finding which negatives the existence of the ultimate question upon which plaintiff seeks recovery overthrows the verdict for plaintiff. (Sec. 3778, Code; Sec. 3728, Code.)

PRINCIPLE APPLIED: Plaintiff secured a verdict against defendant for assault on plaintiff's wife, resulting in her death. The special finding was that the wife did not die as a result, directly or indirectly, of the assault. *Held,* verdict must be set aside.

**CONSPIRACY:** Evidence of—Insufficiency. Evidence reviewed and held insufficient to show conspiracy.

**MASTER AND SERVANT:** Torts of Servant—Course of Employment—Liability of Master. A principal is not liable for the torts which his agent commits when not acting in the course of the employment.

PRINCIPLE APPLIED: A parent sent her sons to a place where she had a right to send them, to get material which she had a right to get. The sons committed an assault on a party. *Held,* the parent was not liable.

**CONSPIRACY:** How Proven—Circumstances—Approval of Act. Circumstantial evidence may be sufficient to establish a conspiracy. Approval of an act likewise has bearing thereon. Evidence reviewed and held sufficient to require the question of conspiracy to be submitted to the jury.

**TRIAL:** Verdicts—Excessiveness—Exemplary Damages—New Trial. The court cannot substitute its judgment in place of the judgment of the jury as to the amount of exemplary damages to be allowed.

PRINCIPLE APPLIED: Plaintiff recovered a judgment for $1,500 which evidently was largely composed of exemplary damages. The trial court reduced it by half. *Held,* the court should have set the verdict aside and granted a new trial.

**NEW TRIAL:** Misconduct of Jurors—Prejudice Presumed. Misconduct of jurors considered and *held* to be such as to justify the presumption of prejudice and to demand a new trial.

**PRINCIPAL AND AGENT:** Existence of Relation—How Proven—Declaration of Agent. Agency cannot be established by the declarations of the alleged agent.

**ASSAULT AND BATTERY:** Damages—Fright of Plaintiff's Children. The effect which the fright of children had on their mother, she not being a party to the suit, is inadmissible.

*Appeal from Howard District Court.*—HON. W. J. SPRINGER, Judge.

TUESDAY, DECEMBER 15, 1914.

REHEARING DENIED MONDAY, MARCH 22, 1915.

ACTION at law to recover damages for assaults committed upon plaintiff and his wife. Defense, general denials and pleas of self-defense. Trial to a jury; verdict for plaintiff against both defendants in the sum of $1,500.00, which was reduced by the court to $750.00; and judgment for the latter amount. Defendants appeal.—*Reversed* and *Remanded*

*Reed & Pergler,* for Jones and Doolittle, Executors

*E. A. Church,* for Mrs. M. B. Doolittle, appellants

*John McCook* and *Frank Sayre,* for appellee.

DEEMER, J.—The petition is in two counts. The first is for an alleged assault committed by Mrs. Doolittle upon plaintiff's wife, which resulted in the death of the latter; and the second is for alleged assaults committed by Amos and Mark Doolittle, minor sons of the defendants, upon the plaintiff himself. It is also alleged that said assaults were part of one general scheme; that they were instigated by both defendants, and that defendants conspired and confederated together, and with their sons, to commit the said assaults; and that the same were a part of one general scheme to force plaintiff and his

wife to leave the premises upon which they were then living, belonging to M. B. Doolittle; and that the said conspiracy was criminal and unlawful, and for unjustifiable ends.

Defendants interposed separate defenses, and each denied the allegations of the petition, pleaded that what was done was in self-defense, and also specifically denied the charge of conspiracy, etc., and further pleaded that the death of plaintiff's wife was due to other causes than the alleged assaults. Defendant M. B. Doolittle pleaded in mitigation of damages that whatever injury was inflicted upon either plaintiff or his wife was due to extreme provocation, and such conduct on the part of plaintiff and his wife as to bring about the alleged assaults. Evidence was adduced upon the issues tendered, and the case was submitted to the jury, not only for a general verdict, but also upon special interrogatories for answers thereto. The verdict was for plaintiff against both defendants, and the jury found in answer to the interrogatories that there was a conspiracy between defendant, M. B. Doolittle, and his sons to commit the assault upon the plaintiff, and also the result of a conspiracy between the said sons and both defendants; and that the assault upon plaintiff's wife was the result of a conspiracy on the part of both defendants. But it also found that Mrs. Jolly, plaintiff's wife, did not die as a result of the assaults or either of them, and that the acts done by Mrs. Doolittle did not contribute to the death of plaintiff's wife.

The defendants each moved for judgment in their favor upon the first count of the petition, based upon the said special findings, and each filed a motion for a new trial and to set aside the general verdict and the special findings, adverse to them, on many grounds, especially upon the ground of misconduct of one or more jurors in the jury room. The plaintiff made two offers to remit, the first one to remit $500.00 from the verdict, and the second to remit $750.00. The trial court reduced the verdict to $750.00 and overruled the motions for a new trial, also the motion for judgment on the first count of the petition. Both defendants appeal.

We may say at the outset that, in view of the answers to the special interrogatories, the defendants' motions for judgment on the first count of the petition, which claimed damages for the premature death of plaintiff's wife and nothing more, should have been sustained. The jury specially found that neither of the alleged assaults caused or contributed to the death of plaintiff's wife, and that .of necessity was the end of the case, so far as the first count is concerned. Code Sec. 3778; *Seevers v. Cleveland Coal Co.,* 158 Iowa 574.

1. TRIAL: verdicts: special findings: which must yield.

II. It follows that whatever errors may have been committed by the trial court in its rulings on matters affecting the first count are without prejudice and should be disregarded because of plaintiff's failure to recover on this count. Plaintiff has not appealed, and errors against him cannot be reviewed on this appeal.

As to the second count, which charges injury to the plaintiff's person by reason of an assault made upon him by defendant's sons, Amos and Mark Doolittle, it is to be observed that neither of defendants was present at the time of this assault, and they are to be held liable, if at all, because they conspired with their sons to commit it or to do some unlawful act, or that they inspired the boys to commit. the assault, aided or abetted them in so doing, or encouraged or incited them to do it. It is not necessary, of course, to show that both defendants conspired to commit the assault, for if either did, he may be held responsible under our rule, although the other did not join therein; but it is manifest that without proof of a conspiracy, or what is the equivalent, neither should be held liable. The trial court so instructed, and the special findings indicate that the jury found a conspiracy on the part of both defendants. Each defendant challenges the sufficiency of the testimony to justify such a finding, and we may say at the outset that we find no sufficient testimony to justify a verdict against Mrs. Doolittle on the theory that she conspired with her codefendant or with her sons, to commit the assault made by them

2. CONSPIRACY: evidence of: insufficiency.

upon the plaintiff; and so far as she is concerned, the case should not have been submitted to the jury on this issue. It is useless to set out the testimony, for it is negative in character, and there is no positive testimony tending to connect this defendant with the assault upon plaintiff.

Indeed, the only thing relied upon is testimony that this defendant, or she and her husband, sent the boys to the premises where plaintiff lived, just before the altercation, to get some stone for use in laying a foundation for a barn, which a mason was then engaged in building for the defendant, M. B. Doolittle. The premises on which plaintiff resided belonged to M. B. Doolittle, and the stone was to be used for the foundation of a barn. The defendants had the right to get the stone from the place plaintiff was occupying, or at least there is no showing to the contrary. The boys came home after the assault, and this defendant helped bind up their wounds, at the same time expressing her indignation at plaintiff's conduct. This assault was on Thursday night, and plaintiff contends that on the following Monday night this defendant went to plaintiff's premises (which, under the record, she had a right to do), and there brandished a large butcher knife in the presence of plaintiff's wife, and either assaulted or threatened to assault the wife; but there is no testimony tending to connect the two assaults in any way, or that any person was concerned in this latter assault other than Mrs. Doolittle herself. This assault, as we have already seen, did no damage to plaintiff's wife.

There is some testimony that, at another time, Mrs. Doolittle was sent by her husband to get a contract from plaintiff, and that he (plaintiff) refused to deliver it to her. This is all the testimony against the defendant, Mrs.

3. MASTER AND SERVANT: torts of servant: course of employment: liability of master.

Doolittle, connecting her in any way with the assault upon the plaintiff. Aside from the fact that Mrs. Doolittle acted in the presence of or by direction of her husband, in the premises, and under the law is presumed to have been under his

coercion, and assuming, *arguendo,* that she is responsible for all that she did, we do not find enough testimony to justify a verdict against her based on the theory that she was in any way connected with the assault made by her sons upon the plaintiff. Conceding, again, that the boys went to plaintiff's place to get the rock at defendant's directions, it does not appear that this was wrong or that the boys were not entitled to get the rock, and hence if upon that mission they turned aside and committed an assault upon plaintiff, which was due either in fact or through a ruse to the claim that plaintiff had not watered the hogs on the premises he was then occupying, as he had agreed to do, defendant would not be responsible on the theory that they were her agents and that she was bound by everything they did while on their mission of procuring the rock. The doctrine of *respondeat superior* does not go to that extent, and what they did was clearly outside of the scope of their employment. *De Camp v. R. R. Co.,* 12 Iowa 348; *Cooke v. R. R.,* 30 Iowa 202; *Kumba v. Gilham,* 79 N. W. (Wis.) 325; *Ferguson v. Terry,* Note in 10 L. R. A. (N. S.) 936 (Ky.); *La France v. Krayer,* 42 Iowa 143, 146; *Moore v. Fryman,* 154 Iowa 534.

The relationship existing between the parties, as mother and son, is no evidence of a conspiracy. *Hickox v. Bacon,* 97 N. W. (S. D.) 847.

III. As to M. B. Doolittle, who was alive at the time of trial and gave testimony in the case, we think there was enough to take the issue of his responsibility for the assault to a jury.

**4. CONSPIRACY: how proven: circumstances: approval of act.** The premises on which plaintiff was living belonged to this defendant (and hereafter in speaking of him, we shall call him the defendant); and he, plaintiff, had two written contracts with reference to the use of the premises with the defendant, one covering the period from September 1, 1910, to March 1, 1911, and the other from March 1, 1911, to March 1, 1912. Their difficulties arose on November 3, 1910, during plaintiff's occupancy under the first contract, and with refer-

ence to the terms of the second. As to this second contract, plaintiff made complaint and wished the defendant to change or "fix it up" to suit him, plaintiff. This, defendant refused to do, and plaintiff then said he would leave the place within thirty days. He fixed this date because of the near confinement of his wife, and thought that it would be safe to remove her at that time. Defendant knew of the wife's condition, but upon this declaration being made, defendant said in an angry manner, "I don't know so much about your staying thirty days if you decide to go. I will manage to get you off and won't go to law about it either."

This conversation was had the last week in October, 1910, and on the third of November, the boys, Amos and Mark, went to the premises ostensibly, at least, to get the rock for the barn, and a dispute then arose between plaintiff and the boys as to plaintiff's violation of his agreement with defendant, and over a claimed telephonic communication of Mrs. Doolittle, either with plaintiff or plaintiff's wife. The immediate cause was a remark by one of the boys that the claimed communication was a damned lie; "that his mother had not telephoned any such message." Another of the boys said plaintiff had not lived up to his contract, and plaintiff remarked that was no concern of his (the boy's). Whereupon the boy remarked, "By God I am here to do my father's bidding, and I will do it or know why." The plaintiff then ordered the boys out of the house. The record then discloses the following:

"I said, 'Mark, you must get out, if you don't get out by asking you like a man, I will call the sheriff.' I rose up in my chair to go to the phone in the next room, and he struck me in the side of the face near the ear there and that prevented me from going to the phone. He struck me with his right hand, I suppose his fist was doubled, the blow seemed pretty hard; it did not knock me down because he struck me a glancing lick. He wounded me in the side of the jaw and

face, on the ear.   My ear was considerable sore where he struck me, on the right ear and below there on the side of the ear where he knocked the skin off.   I don't know how long it was sore, it was sore inside my head, I suppose a week or ten days, something like that.   He knocked the blood out of me, I don't know how much I bled.   It got on my clothing.''

A general melee then followed, engaged in by the boys and by all the members of plaintiff's family, and the boys were driven from the house.

The injury to plaintiff in no way incapacitated him from work.   Within a few days, and before the next Sunday, one of plaintiff's sons met defendant in the town where he lived, and defendant asked him if he had moved yet, to which the son said ''No.''   The defendant then said, ''Well, didn't the boys give you enough the other night?   If they didn't they will give you enough.''   The boys, during the time of plaintiff's occupancy of the farm, were engaged with or for their father in the conduct of the place, and plaintiff had no right under the first contract but to occupy a part of the farm house.   In consideration he was to help milk and do the chores.   Defendant was to furnish one hand to do work upon the premises.   Defendant's boys, or one of them, undertook to do this work, and assumed to see that plaintiff complied with his agreements.   Under this record we think the question of defendant's responsibility for the assault was a question for the jury.   A conspiracy may be proved by circumstantial as well as direct testimony (*Hanson v. Kline,* 136 Iowa 101; *Work v. McCoy,* 87 Iowa 217; *Price v. Price,* 91 Iowa 693) and the ultimate fact is generally for a jury.   *Work v. McCoy, supra; Hines v. Whitehead,* 124 Iowa 262.   Whilst mere approval of an act does not amount to proof of a conspiracy, such approval is testimony of more or less strength tending to show previous authority.   *Brown v. Webster City,* 115 Iowa 511.

IV.   The verdict must have included large exemplary damages, for the actual damages, as shown by the testimony, were

trifling.  Plaintiff lost no time from his work, called no doctor, and suffered but slight inconvenience.  Of course, he was entitled to compensatory damages for shame and humiliation in being assaulted before his family, and in his own home, but the verdict of $1,500.00 could not have been for this alone; and if it were, it would manifestly be so excessive as to indicate passion and prejudice.  The reduction by half, made by the trial court, was evidently because of an excessive award based on the theory of punishment.  That being the thought, the verdict should have been set aside instead of reduced.  *Ahrens v. Fenton,* 138 Iowa 559; *Waltham Co. v. Freeman,* 159 Iowa 567.

5. TRIAL: verdicts: excessiveness: exemplary damages: new trial.

Again, the answers to the special interrogatories finding Mrs. Doolittle guilty of a conspiracy were without substantial support; and were likewise the result of something aside from the proofs.  For this, as well as for the other reason, the general verdict should have been set aside.  *Hraha v. Maple Block Coal Co.,* 154 Iowa 710.

V.  Moreover, this verdict may and doubtless should be accounted for because of misconduct of the jury.  One of the jurors who went into the box acknowledging that he had formed an opinion as to the merits of the case, but who was nevertheless permitted to remain upon the panel, after the submission of the case to the jury and while he was deliberating with the other members upon the verdict, stated in the presence of his fellow jurors:

6. NEW TRIAL: misconduct of jurors: prejudice presumed.

"That some time before the trial he had sold a bill of goods at his store to some parties by the name of Van Schoyck; that after the goods were sold, M. B. Doolittle talked with Van Schoyck, and Van Schoyck went out of the store and did not come back, and did not take the goods; that he, Van Schoyck, afterwards bought the goods at the Alliance Store in Cresco; that Lomas afterward told Mr. Doolittle that if he ever got

in his store again he would kick him out; that Doolittle did come into the store afterwards and bought some goods. That some of the jurors stated that they could not see how Mr. Jolly was entitled to anything; and in reply to that the said F. B. Lomas said that Jolly came to Howard county without anything, that he was a Woodman and applied to the Woodmen for help, and in telling of this Lomas said: 'We wrote down to where he came from and asked what kind of a fellow he was, and they wrote back that he was a good fellow, and then we helped him.' During the deliberation of the jury, some of the jurors said that Mr. Doolittle 'is the meanest man that ever lived,' and affiant states that such statements were especially made by jurors F. B. Lomas and L. J. Long. During the deliberations of the jury, jurors F. B. Lomas and L. J. Long said that some time before this case, Mr. Doolittle had sued the town of Cresco for damages, claiming that he had run into a town pump; that when the case was tried it was proved that the pump had been taken out before Doolittle claimed he ran into it. During the deliberations of the jury the foreman of the jury, Geo. Michel, said, that 'if we didn't give him something the people would laugh at us, because if Jolly was not entitled to something, the judge would have thrown the case out.' While the jury was deliberating on the case, L. J. Long, one of the jurors said: 'If we are going to give him something, give him something; there is no use in giving him a few dollars.' "

Some of these matters testified to by jurors so inhered in the verdict that they cannot be considered; but others, extraneous to the verdict, were properly shown by affidavit. *Douglass v. Agne*, 125 Iowa 67; *Hall v. Robison*, 25 Iowa 91; *Doyle v. Burns*, 138 Iowa 439. Some of the remarks by these jurors were highly prejudicial, and had they been offered and received in evidence, over objections, this alone would have been ground for a new trial. More prejudicial still was their recital in the jury room by a juror or jurors not under oath, and without opportunity for cross-examination. Prejudice

will be presumed, and even though there be a doubt about one matter, the verdict is so large and the answers to some of the interrogatories such as to demand that a new trial be awarded as to defendant M. B. Doolittle, upon this ground alone. *Ayrhart v. Wilhelmy*, 135 Iowa 290, and cases last cited.

VI. Other matters are complained of which are not likely to arise upon a retrial. It may be said, however, that the trial court should have submitted the defendants' plea in mitigation of damages to the jury, and that instruction number eleven, asked by defendant, to the effect that agency could not be proved by declarations of the agent alone, should have been given.

7. PRINCIPAL AND AGENT: existence of relation: how proven: declaration of agent.

VII. The cross-examination of certain of defendant's witnesses regarding what Mrs. Jolly said with respect to one of her children being frightened by the assault was improper in that, if cross-examination, the matter was wholly irrelevant. The children were not suing, and if the testimony were competent at all, it would be by reason of the reflex upon plaintiff's mind, that is to say, the fright of his children might perhaps have affected him. But the effect upon his wife of the children's fright was certainly immaterial. Again, testimony from one of these witnesses on cross-examination that Mrs. Jolly appeared to be of a mild and inoffensive disposition should not have been received.

8. ASSAULT AND BATTERY: damages: fright of plaintiff's children.

For the errors pointed out, the judgment must be reversed and the cause remanded for judgment on the special findings in favor of defendant Mrs. Doolittle, and for a new trial as to the other defendant.—*Reversed* and *Remanded*.

LADD, C. J., GAYNOR and WITHROW, JJ., concur.