James Hollenbeck, Appellant, v. P. E. Hall.

**Libel.** To publish of one that he has for several years owed for medical services; that his attention has been repeadly called thereto to no purpose; that finally, being sued therefor, he, having no other defense, has cowardly slunk behind that of the statute of limitations; and that such a course is not in accordance with the writer's idea of strict integrity,—is not actionable, within Code 1873, section 4097, defining libel as malicious defamation of a person by writing tending to expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse.

*Appeal from Cedar Rapids Superior Court.*—Hon. T. M. Giberson, Judge,

Friday, October 15, 1897.

The plaintiff alleged in his petition that "on or about the first day of June, 1893, the defendant, P. E. Hall, for the purpose of injuring the good name and reputation of the plaintiff herein, and to expose him to the public hatred, contempt, and ridicule, and to deprive him of the benefit of public confidence and social intercourse, did publish of and concerning the plaintiff the following false, libelous, and defamatory matter to-wit: 'Cedar Rapids, Iowa, Dec. 7, 1892. P. E. Hall, Pres. C. R. & M. C. R'y Co., Cedar Rapids, Iowa—Dear Sir: For some years past, one of your old and trusty conductors, Mr. James Hollenbeck, has owed us a bill for professional services rendered his family in the way of consultations with his family physician at his home in Marion. His attention has been repeatedly called to the subject, but to no purpose. We finally sued him, to which he responds by employing an attorney, and contesting the claim. Having no other defense, he cowardly slinks behind that of statutory limitation.

Such a course is not exactly in accordance with our idea of strict integrity. So far as we are concerned, we would prefer not to be connected in an official capacity with a corporation giving employment to men of this character; especially when permitted to occupy positions of trust. Yours, courteously, H. & J. M. Ristine.' " Then follows a denial in detail of the statements contained in the letter, the allegations that it was published by mailing copies to persons named, and that plaintiff has been damaged in the sum of five thousand dollars, for which amount judgment is prayed. No special damages are alleged. To this petition the defendant demurred in these words: "(1) No sufficient publication of the alleged libel is shown to render the defendant liable. (2) The alleged letter or publication set out in the petition is not libelous or actionable, even if published. It is not libelous to charge plaintiff with having availed himself of the statute of limitations, and no language is contained in the alleged letter or publication from which injury or damage to the plaintiff can be inferred." The demurrer was sustained, and, the plaintiff electing to stand on the ruling, judgment was entered against him for costs, and he appeals. —*Affirmed.*

*J. H. Crosby, H. Rickel,* and *John T. Christie* for appellant.

*Chas. A. Clark* for appellee.

LADD, J.—Conceding the letter to have been published, was it libelous? Our statute defines "libel" to be "the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive

him of the benefits of public confidence and social inter-course." Code 1873, section 4097. "Defamation" is defined by Webster as "the taking from another's repu-tation." Odgers, in his work on Libel and Slander, says: "Words which produce any perceptible injury to the reputation of another are called defamatory." It is "a false publication calculated to bring one in disrepute." Cooley, Torts, 193. The derivation of the word leaves no doubt as to its meaning. Was there anything in the letter injurious to the good name of the plaintiff, or tending to bring him into disrepute? It is not dishonorable to be indebted to another, nor is it libelous to publish of another that he owes money. *Regina v. Coghlan,* 4 Fost. & F. 316. To be in debt is very common, and to be unable to make payment does not necessarily involve moral ter-pitude. Nor is the debtor's reputation brought in ques-tion by making a defense which the law sanctions, and which rests on sound reason and long experience Formerly, pleading the statute of limitations was looked upon with disfavor. Lord Mansfield remarked in *Quantock v. England,* 5 Burrows, 2630, "that, in honesty, a defendant ought not to defend himself by such a plea." The statute is now generally conceded to be beneficial, and the defense as legitimate as any other. As said by Justice Story in *Spring v. Gray,* 5 Mason, 523: "The defense, therefore, which it puts forth, is an honorable defense, which does not seek to avoid the payment of just claims or demands, admitted now to be due, but which encounters, in the only prac-tical manner, such as are ancient and unacknowledged, and, whatever may have been their original validity, such as are now beyond the power of the party to meet, with all the proper vouchers to repel them. The natural presumption certainly is that claims that have been long neglected are unfounded, or, at least, are no longer subsisting demands. And this presumption the statute

has erected into a positive bar. There is wisdom and policy in it, as it quickens the diligence of creditors, and guards innocent persons from being betrayed by their ignorance, or their overconfidence in regard to transactions which have become dimmed by age." See 3 Parsons, Contracts, 61; *Penley v. Waterhouse*, 3 Iowa, 418. It cannot be libelous to accuse one of doing what the law approves. In *Homer v. Englehardt*, 117 Mass. 539, it was held that to accuse one of availing himself of the prohibitory liquor law, in order to defeat an indebtedness for liquor sold, is not libelous, the court remarking that, "the plaintiff having the right to make this defense, it is not libelous to publish the statement that he had done so." *Bennett v. Williamson*, 4 Sandford, 60, is precisely in point. Since the law recognizes this defense as legitimate and honorable, to accuse one of making it would not amount to defamation. Bishop, Noncontr. Law, section 283.

II. The entire letter must be considered, and therefrom the plain import and natural meaning as intended, and the sense in which it was understood, determined. The alleged facts are clearly stated. There is no mistaking them from the opinions expressed by the writers of the letter. The characterization of the acts is based entirely on the assumption that the conduct of the plaintiff in availing himself of the defense was not honest and in accord with their standard of integrity. The spirit and purpose of the letter may well be said to indicate an element of character quite as inconsistent with the golden rule as that which permits omissions in the matter of pecuniary obligations. Such a letter may be the subject of just criticism, but its publication does not expose to public hatred or contempt in the sense or to the degree required by the law of libel. See *Urban v. Helmick*, 15 Wash. 155 (45 Pac. Rep. 747); *Donaghue v. Gaffy*, 54 Conn. 257 (7 Atl. Rep. 552).—AFFIRMED,