C. DURANT JONES, Appellant, v. REGISTER & LEADER COMPANY, Appellee.

**LIBEL AND SLANDER:** Libels Per Se—Charging Violation of Or-
1  dinance. A false and malicious publication that plaintiff, mayor of one city, had been convicted of violating an ordinance of a neighboring city governing the speed of automobiles, and had been fined $15, is libelous *per se.*

EVANS, C. J., and PRESTON, J., dissent, holding that the ruling on demurrer was right because no defamatory publication was pleaded.

**LIBEL AND SLANDER:** Libels Per Se—Provoking to Wrath. A
2  false and malicious publication that one Jones had employed another to move a house for him, and that such undertaking by said employee had been stopped by injunction, on account of the manner in which the work was being done, because violative of an ordinance enacted while Jones was mayor of the town, and repre-

senting that the mayor was defendant in said action while he ought to have been plaintiff, is libelous *per se*.

DEEMER, LADD and GAYNOR, JJ., dissent.

EVANS, C. J., and PRESTON, J., dissent, holding that the ruling on demurrer was right because no defamatory publication was pleaded.

**LIBEL AND SLANDER:** Libels Per Se—Pleading—Erroneously 3 Sustaining Demurrer—When Harmless Error—Damages. A ruling *erroneously* sustaining a demurrer to a petition for damages for libel *per se*, on the mistaken theory that no cause of action is pleaded, will be affirmed on appeal when it appears from said pleadings that plaintiff *could, in no event, recover more than nominal damages*. So held where the false charge was (a) that a house mover employed by plaintiff had been enjoined, along with plaintiff, from moving a tractor over paving, in violation of an ordinance enacted while plaintiff was mayor of the town, and (b) that plaintiff had been convicted and fined for violating a speed ordinance.

DEEMER, LADD and GAYNOR, JJ., dissent.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

THURSDAY, JUNE 29, 1916.

ACTION for libel.—*Affirmed.*

*E. J. Kelly* and *H. G. Giddings,* for appellant.

*Clark, Byers & Hutchinson,* for appellees.

SALINGER, J.—I. A demurrer, which was sustained, admits that defendant falsely published concerning plaintiff, who is mayor of Perry, the matter following:

That he was "adjudged second best" in

**1. LIBEL AND SLANDER:** libels *per se:* charging violation of ordinance. a controversy between him and the mayor of Ames; that plaintiff must pay $15 to the city of Ames because "an impromptu court on the lawn of Mayor Sheldon's home" convicted him of exceeding the Ames speed limit with his automobile; that plaintiff claimed he had acted within the law; that from

the fine assessed, notwithstanding, he appealed to the district court; that there a default was entered against him; that, later, the default was set aside, but on condition that plaintiff pay the costs and a fine of $15; that plaintiff was "involved in a peculiar suit" which involved the halting of a house mover by act of court, in that some work being performed for plaintiff was stopped by a temporary injunction, on the charge that an ordinance passed during the administration of plaintiff as mayor was being violated; that, as said ordinance was passed "with the endorsement" of plaintiff, "the legal action which will follow will be watched with interest;" that plaintiff had engaged a house mover to move a building to the Jones Addition to Perry; that the job required passing over several paved streets with a traction engine which said ordinance put "under the ban;" that the moving was stopped by one of the citizens who had recently paid for paving in front of his residence; and that "the situation at this time presents the mayor as defendant in an action in which he should be plaintiff."

By sustaining the demurrer, the court held that the publication is "not itself libelous;" that nothing is pleaded which "would make the publication a libel upon the plaintiff" and that nothing is pleaded "which would justify a recovery."

II. We are constrained to differ from this holding. True, no statute crime is charged in the publication. But that is not essential to constitute a libel. *Call v. Larabee,* 60 Iowa, at 214, 215; *State v. Keenan,* 111 Iowa, at 291; *Morse v. Times-Republican Printing Co.,* 124 Iowa, at 715, 716; *State v. Cooper,* 138 Iowa, at 520. The statute, Section 5086 of the Code of 1897, makes any printing a libel if it tends to provoke the one of whom it is published to wrath, or tends to expose him to public hatred or ridicule, or tends to deprive him of the benefits of public confidence or social intercourse. The cases cited establish that any publication which has a tendency to accomplish either or all of the things which the statute includes in its definition of libel is libelous *per se,* and that

damage is presumed, wherefore no special damages need be pleaded. In *Call v. Larabee*, 60 Iowa, at 215, we say that, because libel is a public offense, "all publications which the law regards as libelous are actionable, *per se*"—in effect, that the commission of a public offense of itself makes a right of action for the one who suffers therefrom. And the definition found in this criminal statute is applicable in civil actions. *Morse v. Times-Republican Printing Co.*, 124 Iowa, at 712, 713.

The publication complained of is in substance a false charge that an employe of plaintiff violated an ordinance which was passed with his approval as mayor, and that he who should be behind a prosecution for the offense was defendant in an injunction against the continuance of the offense; further, that plaintiff had unsuccessfully resisted a prosecution for violating the speed limit of a town of which he was not mayor—and all of it is so worded as to show a striving after humorous effects. It may be conceded that it has no tendency to expose plaintiff to public hatred or contempt nor to deprive him of the benefits of public ,confidence or social intercourse. But it does have a natural tendency to provoke one who knows it to be false to wrath, and a tendency to make him ridiculous. If so, it is a libel, actionable *per se*. *Morse v. Printing Co.*, 124 Iowa, at 713, 715, 716. It follows that *something* was recoverable, and that the demurrer should not have been sustained.

**2. LIBEL AND SLANDER: libels *per se:* provoking to wrath.**

III. But the point is made that the ruling is harmless, within the unquestioned rule that we will not reverse for a denial of nominal damages or determine an appeal in which there is really nothing involved beyond settling costs. *Moller v. Gottsch*, 107 Iowa, at 238. True, the cases cited in brief of appellant do not deal with libel cases. But does not the very case law which makes every libel actionable *per se* make this rule of appellate review applicable to every suit for libel? As

**3. LIBEL AND SLANDER: libels *per se:* pleading: erroneously sustaining demurrer: when harmless error: damages.**

every libel is actionable *per se,* and as we must note judicially
that every libel is not equally injurious, it must be held that,
while the law permits a recovery in every case of libel, it sets
no limits at either end of the recovery.  Notwithstanding that
the plaintiff is entitled to something, it is apparent that there
may be cases in which the damages allowed either are or
should be nominal.  As said, the very fact that damages are
due for any libel proves that there may be a libel which
causes no substantial injury.  We say in *Call v. Larabee,* 60
Iowa, at 214, 215, that "the law presumes that damages do
result from the libel, and, in the absence of proof thereof, it
will award at least a nominal sum."  In *Dorn v. Cooper,* 139
Iowa, at 749, we declare that "it is no doubt true that nominal
damages only may be awarded in libel suits."  It is true, we
add that, "as a general rule, the law presumes actual dam-
ages from the publication of an article libelous *per se.*"  It
will be noted that this either cancels the concession that there
may be a merely nominal recovery, or else it is a statement
made on the erroneous assumption that some libels are, while
others are not, actionable *per se.*  Be that as it may, the state-
ment does run counter to what is said as part of it, and with
the holding of *Call v. Larabee,* supra.  Moreover, it is dictum:
it is used in reversing for the giving of an instruction.  That
instruction included nominal damages among what is per-
missible recovery.  But the reversal is not for that.  The
instruction says that nominal damages are those given where
a wrong has been committed and no actual injury or damage
has resulted, and then proceeds that, if the jury finds that
the article in question caused no injury to plaintiff, then to
award only nominal damages, and that, "in such cases, some
small sum, as one cent or ten cents, is awarded as damages in
order to carry the costs against the person committing the
wrong."  We hold that the jury has nothing to do with the
matter of costs, and it is better practice not to refer to it in
the instructions, but that, "if it is referred to, the jury should
not be misled regarding the matter."  We say:

''The instruction here given, in view of the offer made to confess judgment, was positively misleading, in that an award of nominal damages stated would not carry costs. A jury, in such cases, is prone to return a compromise verdict, and it is well known that they frequently return their verdicts with an eye to the adjustment of the costs. It is common knowledge of the profession that in such cases juries, more frequently than otherwise, consider the matter of costs in making their awards. With this fact in mind, it is better to say nothing about the costs; but if reference is made to the matter, it should not be so stated as to mislead the jury. Under the English practice it was the custom of judges not to refer to the matter of costs, even at the jury's request. We are constrained to hold that this instruction, in view of the circumstances disclosed by the record, should not have been given. Appellee says, however, that the jury did not follow the instruction, in that it awarded compensatory damages in the sum of one dollar. It will hardly do to say that a verdict for one dollar is compensatory; but, if it be, this does not cure the error in the instruction. The award may have been made in order that there might be no question as to who should pay the costs, without any reference to compensation to the plaintiff; but, if this be not true, the vice of the instruction with reference to mitigation of damages becomes apparent. That is to say, the jury may have concluded that the mitigating facts pleaded should be considered in reduction of actual damages suffered. Upon no ground can the instruction quoted be sustained.''

It is plain nothing said concerning a presumption of actual damages is of the decision.

We held, in *Crawford v. Bergen*, 91 Iowa, at 677 and 679, that we will not reverse for failure to award nominal damages for slander. True, in *Flues v. New Nonpareil Co.*, 155 Iowa, at 294, we say that there is a distinction between slander and libel, but also that the distinction is that ''words are often deemed libelous *per se* when written which would not neces-

sarily be slanderous when spoken." The only reasonable interpretation is that words libelous *per se* may not be slanderous *per se*. The *Flues* case is not authority for the proposition that, though there may be a nominal verdict for a slander which charges a statute crime, which is the *Crawford* case, there cannot be such a verdict for *any* libel. The rule that every libel is *per se* actionable includes the gravest and the lightest. In slander, the graver only is thus actionable. While not every slander is slander *per se*, and every libel is libelous *per se*, a false oral accusation of arson is as much actionable *per se* as is every libel. In the *Crawford* case, we justify a nominal recovery for such an accusation. Is it possible that nominal damages may be sufficient compensation for a slander charging arson and that more than nominal damages must follow a libel charging injurious treatment of a pavement?

Because any libel is actionable *per se*, it follows that recovery for a libel should and will differ, and follows in turn that recovery for some libels will and should not be more than nominal—that, at all events, the law does not proscribe a nominal verdict for the plaintiff in a libel suit.

IV. The very making of the rule of appellate review which denies reversal for failure to obtain nominal damages establishes the right of the appellate court to determine whether more than nominal damages are justified by the record. For such rule can never be applied if the tribunal empowered to apply it may not determine that the plaintiff is not entitled to substantial damages. In the *Crawford* case, 91 Iowa, at 677 and 679, we held that nothing more than nominal damages was due for a slander charging arson. The only question, then, which we have is whether a substantial recovery by this plaintiff could be sustained if given. We cannot conceive how it could work a substantial injury to plaintiff to publish that a house mover employed by him had been enjoined from moving a tractor over paving laid down with the official concurrence of plaintiff as mayor, and that

plaintiff was made defendant in the temporary injunction. As for the other publication, while we do not purpose to put the seal of approval upon driving an automobile contrary to municipal regulation, the fact remains that driving one at too high rate of speed is not *malum in se*, and we think we may take judicial notice that one who, on·a single occasion, violates such ordinance will not thereby suffer substantially in his standing as a citizen, in social relations, public esteem generally, nor in financial or political opportunity, nor be pilloried by public ridicule. We think we may so note also, merely as an argument on this proposition, that, while technically such violation is a misdemeanor, it is put into a class by itself, even by those charged with enforcing such regulation, in that usually one accused of violating it is not even put under actual arrest, but is trusted to appear for hearing and to submit to any punishment that may be ordered, upon mere engagement so to appear and submit. While what we have said does not change that such conduct has by ordinance been made a misdemeanor, it does have a bearing on how much, or rather, how little the violation of such ordinance affects the standing of the offender. And while these publications may have tended to provoke the plaintiff to wrath, that goes rather to the right to sue than to the right to substantial recovery.

It is our opinion that, if this case went to trial and the jury found all that the demurrer admits, we should be compelled to interfere if plaintiff had a substantial verdict. It follows that erroneously sustaining such demurrer effects no more than denying nominal damages and costs of suit, and that, therefore, we should not reverse for such error.— *Affirmed.*

WEAVER, J., concurs.

EVANS, C. J. (concurring).—I concur in the affirmance. I think, also, that neither count of the petition shows a publication which is *defamatory.*

PRESTON, J.—I concur in the affirmance on the grounds stated by Justice Evans.

GAYNOR, J. (dissenting).—I am constrained to register a dissent from the holding of the majority upon two propositions in this case:

1st. In so far as it holds that the second count of the petition is libelous *per se.*

2d. In so far as the opinion holds that the court, on demurrer, may substitute itself for a jury and determine what, if any, damages the plaintiff is entitled to recover in an action for libel, where the published words are actionable *per se.* Or, in other words, that where a demurrer is interposed to a suit charging libel, and the publication is in and of itself libelous *per se,* the plaintiff is entitled to damages, without alleging or proving special damages, and it is not for the court to say that plaintiff cannot, upon such a charge, recover more than nominal damages.

We will take up these different questions separately. That there may be a better understanding of this controversy, it is proper to say that the petition is in two counts. The first count alleges that, on the 6th day of June, 1913, the defendant published, of and concerning the plaintiff, the following article:

"Nevada, Iowa, June 5—Special.—C. Durant Jones, who was mayor of Perry, has been adjudged second best in his controversy with Mayor Parley Sheldon of Ames. Furthermore, Mr. Jones must pay $15 into Ames city coffers because he was convicted by an impromptu court on the lawn of Mayor Sheldon's home of exceeding the college town's speed limit in his automobile. Mr. Jones had claimed that his automobile was within the law. When Mayor Sheldon assessed a fine, he refused to pay it, appealing to the district court. Later, a default was entered against him. Yesterday the default was set aside, after Judge Lee had listened to the arguments of attorneys on both sides. The condition imposed by the judge, however, was that former Mayor Jones pay the costs of the case and the $15 fine."

The count alleges further that the statements of fact in

said article were false and untrue; that the defendant, in publishing the same, acted maliciously; that the publication of said defamatory matter tended to provoke plaintiff to wrath and expose him to public hatred, contempt and ridicule, and to deprive him of the benefits of public confidence and social intercourse, all to his damage in the sum of $10,000. The second count alleges that, on the 18th day of September, 1912, the defendant published, of and concerning the plaintiff, the following article:

"House Mover Halted by Court. Perry Mayor involved in Peculiar Suit. Perry, Iowa, Sept. 17.—Special.—An interesting case arose in Perry today when some work being performed for Mayor Jones was halted by a temporary injunction charging that an ordinance passed during Mr. Jones' administration was being violated. Inasmuch as the ordinance was passed with the indorsement of the mayor, the legal actions which will follow will be watched with interest. Mr. Jones had engaged Austin Howard, a house mover, to move a building from the west part of the city to the Jones Addition in the southeast part of town. To make the trip, it was necessary to go over several paved streets with a traction engine, which is used by the house mover. The ordinance mentioned prohibits the running of traction engines which have lugs on the drive wheels, over the paving. The engine used by Howard came under the ban, and one of the citizens who recently paid for paving in front of his residence stopped the proceeding by the court action. The situation at this time presents the mayor as defendant in an action in which he should be the plaintiff."

The count further alleges that the statements of fact in this article were also false and untrue; that the defendant acted maliciously in publishing the same; that the publication tended to provoke plaintiff to wrath, to expose him to public hatred, contempt and ridicule, and to deprive him of the benefits of public confidence and social intercourse, all in the sum of $5,000.

The defendant filed a demurrer to both counts of plaintiff's petition, in the following language:

"First.  The petition fails to state a cause of action in this—the publications complained of are not in themselves libelous, and nothing is plead in either count of the petition which would justify recovery.  Second.  The matter plead in Count One does not state a cause of action, for the reason that the publication complained of is not, in itself, libelous, and nothing is averred or plead in the count which would make the publication of the same a libel upon the plaintiff. Third.  The matter plead in Count Two does not state a cause of action, for the reason that the publication complained of is not, in itself, libelous, and nothing is averred or plead in the count which would make the publication of the same a libel upon plaintiff."

This demurrer was sustained as to both counts, and, the plaintiff electing to stand upon his pleading, judgment was entered in favor of the defendant, dismissing plaintiff's petition at his cost.  From this, plaintiff appeals.  The only error assigned, is that the court erred in sustaining the demurrer. We will treat these counts separately.

The facts charged in the first count are that the plaintiff was adjudged guilty in the mayor's court at the town of Ames, of running his automobile in violation of the speed limit; that, when he refused to pay the fine so adjudged against him, he appealed to the district court, and later, a default was entered against him.  Thereafter, this default was set aside.  "The condition imposed by the judge, however, was that the former Mayor Jones pay the costs of the case and a $15 fine."

The demurrer admits the fact that the publication was made.  It admits that the statements therein were false and untrue; that the things did not occur as alleged; that the defendant acted maliciously.

As to the article in this first count, we agree with the majority that the words published are libelous *per se*.  It

constitutes a direct attack upon the integrity of the plaintiff, both as a citizen and as a public officer. It charges him with a violation of a public ordinance of a neighboring city. The demurrer admits that the charge was untrue, and made maliciously. The tendency was to provoke him to wrath, to expose him to contempt or ridicule, and, in some degree, to deprive him of public confidence. It comes within the statutory definition of libel, and is, therefore, actionable *per se*. The statute was intended to protect men from assaults of this character, upon their good name, fame and reputation for integrity, social conduct and right living among their fellows; to protect them from assaults publicly made through the public prints. Whether the words spoken were defamatory in their meaning, and tended to provoke to wrath the one against whom they were spoken, or expose him to public hatred, contempt, or ridicule, or to deprive him of public confidence or esteem, was a matter for the court. It was for the court to say whether the publication was a violation of the inhibition of the statute. If the court so found, the words were actionable *per se,* under the law. If they were, the law implies damages from the publication, and it is for the jury to assess the amount.

As to the second count, we dissent from the holding of the court that the article published is libelous *per se,* for the reason that it is not sufficient that its publication disturb the mental equanimity of the party against whom it is published, or that it provoke him to wrath. It must be defamatory in order to be actionable *per se.* Our statute, Section 5086 of the Code of 1897, provides:

"A libel is the malicious *defamation* of a person, made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse."

A violation of this statute is a violation of an inhibition enacted for the purpose of protecting a citizen from being

defamed, and is actionable *per se* only when defamatory. There must, therefore, be a malicious defamation, a taking from another's reputation thereby, and some perceptible injury to his reputation, to his good name, fame, and standing in the community, and this must tend to provoke wrath. A publication, to be defamatory within the meaning of this statute, must tend to injuriously affect the character or reputation of the other, and tend to provoke him to wrath, or expose him to ridicule, etc. The mere publication, by printing or writing, of that which tends to annoy, disturb, grieve, or provoke another to anger, is not actionable *per se*, unless it charges him with that which goes to the very character and reputation of the person assailed, and affects him injuriously in respect to these matters. It must appear that there was something injurious to the good name of the party, or something which tends to bring him into disrepute, before it can be said to be a malicious defamation. Many things can be said in public print about a man which may provoke him to wrath, may expose him to ridicule in a certain sense, and yet not reflect upon his integrity as a man, or his standing as an honorable, upright citizen, or reflect injuriously upon his character. To be libelous, it must be defamatory and malicious, and tend to provoke him to wrath. It is not sufficient that it so tends. It must reach further, and reflect upon his integrity and his character, his reputation, his good name, his good fame and standing in the community, and must injuriously affect him in this respect, in the estimation of others, before it can be said to be libelous *per se*.

The plaintiff in this case is presumed to possess the intelligence and mental equanimity of the ordinary man. When we consider the allegation of this article, the mind is directed to the ordinary reading, thinking public. What impression would it make upon the mind of the ordinary reader, who had no knowledge of the facts other than as published, assuming them to be true, and reading them on that assumption, as the ordinary reader does? If the article, thus considered, could

not and would not affect his reputation and character, and could not deprive him of the public confidence and esteem of his neighbors, even though it provoke him to wrath, the publication is not libelous *per se*, and actionable as such.

In this second count, it is charged that the plaintiff employed one Howard, a house mover, to move a building for the plaintiff from one point in the city of Perry to another point; that the house mover found it necessary to go over several paved streets with a traction engine in order to accomplish this; that in doing so, he used a traction engine which had lugs upon the drive wheels; that there was an ordinance prohibiting him from using such engine on paved streets; that a resident of the town who had recently paid for paving in front of his residence stopped the proceeding by court action; that the plaintiff herein was made defendant in that action. It is alleged that the ordinance, to enforce the observance of which the action was brought, was passed while plaintiff was mayor of the city. We are not called upon to say what effect this publication had upon the mind of the plaintiff, but whether or not it was defamatory in its character; whether it reflected upon the good name, fame, and reputation of the plaintiff as a citizen and a right-living man in the community.

We think there is nothing in this article in itself defamatory, that defamed the plaintiff, that tended to produce any injury to his reputation, or that was, in the least, calculated to bring him into disrepute. A servant whom he had employed to move a building violated the ordinance. He was made defendant simply because of the rule of *respondeat superior*. He is not charged with any culpable or wilful wrong, or intentional violation of the ordinance; nor is it said that he had any knowledge of the violation of the ordinance, or participated in its violation. We are inclined to think that the mind would be supersensitive that would be even provoked to mild wrath by a publication like this, and that a reader of ordinary intelligence would not hold the plaintiff in less esteem because of these facts. We cannot conceive of this

article's having the tendency claimed for it by the majority, to wit, that it was a *malicious defamation of the character and reputation* of the plaintiff. It does not come within the definition of libel, and is not, therefore, actionable *per se.* Upon this point, see *Hollenbeck v. Hall,* 103 Iowa 214; *Mosnat v. Snyder,* 105 Iowa 500, 504. In this last case it is said:

"To render the letter libelous, it must be defamatory, in the sense indicated, and tend to some of the consequences specified in the statute quoted."

A libel is a malicious defamation. Defamation is defined by Webster as a taking from another's reputation. Words which produce any perceptible injury to the reputation of another are called defamatory. See *Hollenbeck v. Hall,* supra; *Mosnat v. Snyder,* 105 Iowa 500. No publication is libelous that is not defamatory. Nothing is defamatory unless it produces some perceptible injury to the reputation of another. There was nothing in this publication that reflected upon the reputation, character, integrity, good name, or fame of the plaintiff, or that could tend to bring him into public scandal, or in any way affect his character or reputation injuriously. The worst that can be said for this article is that its publication might have a tendency to provoke the plaintiff to wrath, and this is not sufficient to make it libelous *per se.*

This brings us to a consideration of the second proposition; and, in the consideration of this proposition, we assume, as the majority does, that the article published and complained of was actionable *per se;* that it was a malicious defamation of the reputation and character of the plaintiff in the community in which he lived; that it tended to provoke him to wrath, expose him to public hatred, contempt or ridicule, or to deprive him of public confidence and esteem. To be actionable *per se,* under the theory of the majority, the publication must be in violation of the inhibition of the statute hereinbefore set out. To violate this inhibition, the article published must be defamatory in its nature, must tend to take

from the good name, fame and reputation of the plaintiff in the neighborhood in which he lives, and injuriously affect him in the community in which he lives. Or, in other words, it must have produced some perceptible injury to the reputation of the plaintiff, to be libelous *per se.*

The pertinent question then is, Can the court on demurrer say, as a matter of law, that an article so published of and concerning another amounts simply to an invasion of his right to have his good name unmolested, and entitles him to simply nominal damages for the invasion of such right? Can the court on demurrer say that one who has a right, under the law, to have his good name unassaulted and unmolested in the community in which he lives—except it be by his own act —is not entitled to more than nominal damages from one who has publicly, through the prints, assaulted his good name, traduced his character, and held him up to ridicule among his neighbors? The answer of the majority is:

"Yes, in some cases, not in others. That depends upon the extent of the injury inferable from the naked publication. The character of the publication may indicate that he is entitled to substantial damages, or the character of the publication may indicate that he is not entitled to more than nominal damages, and this fact the court may determine and dispose of on demurrer."

That is, the majority assumes that, even when an article is a violation of the inhibition of the statute, subjecting the violator to a criminal prosecution, yet one who has suffered from the wrong may not recover more than nominal damages, in certain instances, and the court may, on demurrer, determine this question. If the court, on demurrer, may determine that the plaintiff is entitled only to nominal damages, then the court, on demurrer, may assume the position of a jury and assess such damages as the court, in its judgment, upon a mere reading of the article, concludes would fairly compensate plaintiff for the wrong done. As soon as it is assumed that the article is libelous *per se,* and that the plain-

tiff is entitled to some damages, with no limit as to amount fixed in the law, then it becomes a question of fact, upon which the complaining party is entitled to the verdict of the jury. No two cases are exactly alike. In no two cases is the injury which flows from the assault upon the good name the same. When the article is actionable *per se*, the plaintiff is not required to allege or prove special damages. The law presumes that he has sustained some damages. It does not presume any particular amount. Upon this fact question, the plaintiff is entitled to be heard before a jury. The amount not being fixed, it is for the jury to say—it being purely a fact question—what amount should be assessed. Mental pain and suffering are an element of damage in suits of this kind. Where any actual damages are sustained, the jury is entitled to assess exemplary damages, damages which are a punishment for the malicious wrong done the plaintiff. Where the words are actionable *per se*, malice is presumed; but the plaintiff is not limited to this presumption, but, under a charge that the publication was malicious, may show active and express malice in its publication, and in such cases exemplary damages may be awarded by the jury. See *Davis v. Mohn*, 145 Iowa 417, in which it is said:

"It is very often the case that a vile and malicious slander may not seriously injure the reputation or business of its victim, and still cause him such mental pain and suffering as to practically unfit him for business, and for that social intercourse with his friends and neighbors which would otherwise be had. . . . We hold that such pain and suffering may be considered by the jury in determining the amount of damages in cases where the words spoken are actionable *per se*."

As to the allowance of punitive damages where express malice is shown, under a general charge of malice, see *Dahl v. Hansen*, 152 Iowa 555; also *Brandt v. Story*, 161 Iowa 451, in which it is said:

"Where the words are spoken, and shown to be spoken, without any belief in their truth, or reason to believe that

they are true, and with the intent of injuring the good name of another, punitive damages ought to be awarded as a punishment, and to warn others not to recklessly, wilfully and maliciously defame the character of another.''

In *Andreas v. Hinson*, 157 Iowa 43, it is said:

''The charge made against the plaintiff was slanderous *per se*, and malice was, therefore, implied. The plaintiff was not, for that reason, precluded from proving malice in fact. For that purpose, he had a right to submit to the consideration of the jury the entire conduct and mental attitude of the defendant at the time of the publication of the slanderous words. It is urged that the verdict was excessive, and that only nominal damages should have been allowed. The verdict was $300. The amount of the verdict does not indicate any passion or prejudice. The jury having found that the slanderous word was used by the defendant in an actionable sense, actual damages were implied, without any formal proof as to the amount thereof. It is not true in such a case, that only nominal damages can be allowed. The amount of damages in such a case is peculiarly within the discretion of the jury,'' citing authorities. See *Emerson v. Miller*, 115 Iowa 315.

If the contention of the majority is to be sustained, and is to be hereafter a rule to guide the trial courts in cases of this kind, we have this situation: The plaintiff makes the formal allegations in his petition from which it is apparent that the party charged has been guilty of a wilful and malicious defamation of his character; has published of him that which tends to affect his good name and reputation in the community in which he lives; holds him up to scorn and ridicule in a way that might reasonably be considered as provoking him to a breach of the peace; has said that about him which tends to injure him in the enjoyment of society,—which tends to throw contempt upon him, which might affect his general fortune and comfort, which might cause him to suffer

mental pain and anguish. The party charged, by demurrer admits all this, yet the court, under the high prerogative of the rule, may say to the complainant:

"A good reputation is a valuable asset in any community; your right to have your character unmolested in the community has been invaded; the publication was malicious; it was defamatory in its character; it reflected upon your good name and reputation in the community in which you lived; it had a tendency to provoke you to wrath, or a breach of the peace, or to expose you to public hatred, contempt or ridicule, or to deprive you of the benefits of public confidence, or social intercourse; yet it is my opinion, upon the naked allegations of your petition, without a showing, except as it appears in the petition, of the extent of the injury suffered by you from this wrong, that you are not entitled to recover more than nominal damages—those damages which are ordinarily allowed for the invasion of a right where no actual damages are suffered."

If the court is permitted, from the naked allegations of the petition, to determine that the plaintiff is not entitled to recover more than nominal damages, then, upon the naked allegations of the petition, in every case of this kind, the court is allowed, on demurrer, to assess such damages as in his judgment, from a consideration of the petition alone, the plaintiff is entitled to recover, and thus deprive the plaintiff of a right to be heard upon the fact question as to the amount of damages which he has actually sustained.

The cases relied upon by the majority are not in point. Those cases are only authority for the holding that, where a case has been fully tried before a jury and all the facts presented to the jury, and the jury has determined that plaintiff is not entitled to recover, this court will not reverse upon that record, when, from an examination of the whole record, it is of the opinion that the jury erred in not allowing the plaintiff nominal damages; that, where this court finds, upon an examination of the whole record as made, that the plaintiff could,

in no event, recover more than nominal damages, the court will not reverse because of the failure on the part of the jury to assess nominal damages. The other line of authorities rests upon the thought that this court will not reverse a case upon appeal when the matter has been so adjusted before reaching this court, or at the time it is submitted to this court, that there is nothing left for determination but a naked question of abstract right, involving only a question of costs; and these holdings are upon the theory that substantial justice will be more nearly attained by permitting the case to remain *in statu quo* than would be accomplished by reversing it and subjecting the parties to added costs in further litigation, when no substantial rights are involved.

As to the first count of the petition, the words spoken being actionable *per se*, we think the court erred in sustaining the demurrer.

As to the second count of the petition, the words published not being actionable *per se*, and no special damages being alleged, we think the court rightfully sustained the demurrer.

We would reverse as to the first count and affirm as to the second count.

DEEMER and LADD, JJ., concur in this dissent.