WALTHAM PIANO COMPANY, Appellant, v. J. N. FREEMAN.

**Sales:** AGENCY: COMPENSATION: EVIDENCE. In an action for the price of pianos sold defendant under an agreement that he should receive a certain commission on those resold at special sale, the fact that plaintiff's manager assisted in making the resales would not defeat defendant's right to commissions. Evidence held sufficient to take the question of defendant's right to commissions to the jury.

**Attachment:** DAMAGES: ALLOWANCE OF ATTORNEY'S FEES. To justify the allowance of attorney's fees as an element of damage in procuring the release of an attachment, it must appear not only that the services were reasonably necessary, but the reasonable value of the services must also be shown.

**New trial:** AFFIDAVITS: HEARSAY EVIDENCE. The affidavit of an attorney in support of a motion for a new trial, based solely upon alleged statements of jurors concerning the verdict and the manner of computing the same, is purely hearsay and not entitled to consideration.

*Appeal from Tama District Court.*—HON. C. B. BRADSHAW, Judge.

THURSDAY, MAY 15, 1913.

ACTION for purchase price of pianos, in which a counterclaim was interposed. Judgment was entered for less than plaintiff prayed, and therefrom it appeals.—*Reversed*.

*Willett & Willett* and *Crosby & Fordyce,* for appellant.

*Redmond & Stewart* and *Struble & Stiger,* for appellee.

LADD, J.—The defendant handles pianos as jobber and retailer at Cedar Rapids. By written contract he purchased fifteen pianos of plaintiff, who shipped them to Toledo, where the latter undertook to conduct a special sale thereof, and to sell sixty per cent. of the same. It was to receive for such service ten per cent. of the gross amount of the business done, and defendant was to furnish the board of plaintiff's salesman, advertising, and other expenses. Pianos were not disposed of as anticipated, and a controversy arose, whereupon this action for the purchase price of the pianos, $1,685, commissions in the sum of $47.50, and expenses amounting to $32.88 was begun aided by attachment. The defendant admitted his liability for the pianos, but put in issue the claims for expenses and commissions, and by way of counterclaim alleged that the writ of attachment was sued out wrongfully and maliciously, because of which he prayed both actual and exemplary damages. Allowance for certain expenses also was asked. Several errors are assigned, and these may be disposed of in the order argued.

I. The court withdrew from the jury the claim for commissions. By the terms of the contract plaintiff was entitled to a "commission of ten per cent. on the gross amount of all business done" at the special sale while being conducted by it, and the evidence tended to show that at least one and possibly two pianos were sold during that period. True, plaintiff's manager, though participating in negotiating these sales, did not complete them, but this was not essential in order to have earned the commission. It was enough if the sales were made in connection with and as a part of the business transacted at the special sale, and the evidence was sufficient to carry this issue to the jury. Of course, it should have been

1. SALES: agency: compensation: evidence.

submitted in connection with the issues raised as to which party actually breached the contract by which the special sale was discontinued. The evidence may be more ·definite as to when these sales were effected on another trial, and if it appears that these occurred during the special sale, and that plaintiff did not breach the contract under which the special sale was being conducted, then these items should be allowed.

II.    One of the items of damages alleged in the counter-claim was $50 for services of an attorney in procuring the

2. ATTACHMENT: damages: allowance of attorney's fees.

releases of the writs of attachment. In support thereof the only evidence adduced was that of defendant, who testified: "I proceeded to get a bond and release the attachment. The bond cost me $30. I was to the expense of· $50 for attorney fees arranging the matter. There was a great deal of telegraphing and telephoning, and I haven't got the statement of that." The particular services rendered by the attorney are not disclosed, nor was there any evidence as to the reasonable value of the services rendered.

To justify the allowance of this item, it must have appeared, not only that the services were reasonably necessary in securing the release of the levy, but also the reasonable value of such services. *Massena Savings Bank v. Garside*, 151 Iowa, 168.

It is suggested that these were. matters familiar to the jury, and for this reason proof of value was not essential and *Lampman v. Bruning*, 120 Iowa, 167, is relied on. There the charge of $10 for attending a patient in confinement was proven, and the reasonable value of the services not shown, and it was said that "such items are rarely the subject of controversy in damage suits, and where the services rendered are of a nature likely to be familiar to the jury, and the charge not questioned, its reasonableness may be safely left to their determination." It cannot be assumed that ordinarily jurors are familiar with the charges of attorneys

in procuring the release of attached property, especially when the character of the services rendered has not been shown. There was error in submitting this item to the jury.

III. The court instructed the jury to allow the plaintiff on the claims made in the petition $1,685, and it submitted to the jury whether defendant should recover on the counterclaim $105 in actual damages and $2,000 in exemplary damages, and on the second counterclaim whether there should be allowed defendant $191.44 on certain expenses, and the jury was told that the verdict should be for the difference between the amounts alleged on the counterclaims and the sum owing plaintiff on the claim made in the petition. A verdict in favor of defendant for the sum of $1,105 was returned. One of the grounds of the motion for new trial, filed by plaintiff, was that the jury ignored the sixth instruction, directing them to allow plaintiff $1,685 and how to make up the verdict, in that the defendant was allowed much in excess of what he claimed, and was contrary to the instructions generally, and the result of passion and prejudice. Thereupon the defendant interposed a resistance to the motion, attaching the affidavit of one of the attorneys wherein he swore that six members of the jury, naming them, had stated to him that their intention was "to give the plaintiff in the above-entitled cause a verdict for the difference between $1,685, being the amount that the court instructed the jury to allow to the plaintiff on plaintiff's claim, under instruction No. 6, and the amount which they returned in favor of the defendant, to wit, $1,105, . . . and that the verdict which they returned in favor of the defendant was a mistake, and that they intended to give the defendant an offset of $1,105, and give the plaintiff in said cause a verdict for $580." This was followed by a concession that the verdict as returned was contrary to instructions, and "is excessive under the instructions and the evidence," and consenting that the judgment be entered for $580, "being the amount

3. NEW TRIAL: affidavits: hearsay evidence.

which the jury, by its verdict intended to return in favor of the plaintiff.'' Thereupon the court entered judgment for $580 in favor of plaintiff, and assessed against it attorney's fees in the sum of $250.

The affidavit filed was based entirely upon alleged statements of jurors to the affiant, and was hearsay and entitled to no consideration. *State v. Tyler*, 122 Iowa, 125,; *State v. Quinton*, 59 Iowa, 362; *Grady v. State*, 4 Iowa, 461. ·There was nothing before the court indicating that any mistake had been made by the jury in the matter of computation. It will be noted that the jury necessarily allowed $1,685 on the petition, and could have allowed no more than $2,296.44 on the counterclaims. Had the jury awarded the latter amount, the difference would have been but $611.44, or nearly $500 less than the verdict of the jury. Appellee says the jury did not allow all claimed by defendant but could have awarded $1,105 only, but how does he know? Nothing in the record shows how they arrived at the result, though counsel for appellee says it is too plain to permit of quibbles or speculation.

As all the damages awarded on the counterclaims in excess of $296.44 were exemplary, the verdict cannot be cured by remittitur. *Ahrens v. Fenton*, 138 Iowa, 559. There is no escape from the conclusion that a new trial should have been granted, and the court erred in not doing so. *Reversed.*