E. T. HAINES, Appellee, v. M. S. WELKER & COMPANY et al., Appellants.

JUDGMENT: Conclusiveness—Wholly Immaterial Matter. The injection into an action of matter wholly immaterial to a proper

determination of *said* action does not work an estoppel by adjudication to relitigate such matter in a subsequent action *wherein it is material.*

PRINCIPLE APPLIED: Plaintiff, a resident of Iowa, was sued in Nebraska on his notes, and by the transferee thereof. He in some manner injected into his pleadings (apparently without making any issue of it) a statement that the original payee, in violation of a law of Iowa, had transferred the notes with intent to deprive him (the maker) of his Iowa exemption rights. Judgment was rendered against plaintiff on said notes, and in favor of the transferee. Later, plaintiff brought action for damages against the original maker of the notes, on the ground that, in violation of said Iowa law, said maker had transferred said notes with intent to deprive him of his Iowa exemption rights.

*Held,* the injection of said statement into the pleadings filed in the action on the notes was *wholly foreign to any issue therein pending,* and did not estop plaintiff from relitigating said question in the latter action.

**APPEAL AND ERROR:** Review—Presumption—Supporting Fact. 2 Principle recognized that a general verdict on conflicting evidence carries a presumption that the jury found the existence of that fact which will support the verdict, rather than that they found the existence of a fact which would leave the verdict without any support.

**EXEMPTIONS:** Protection and Enforcement—Sending Claims Out 3 of State—Damage. One may be actually damaged by having his property applied to the satisfaction of his just debts. So held where a debtor *having no property but his exempt wages* was deprived thereof by the act of his creditors in sending claims against the debtor out of the state for collection.

**MASTER AND SERVANT:** Interference with Relation—Procuring 4 Discharge. One who voluntarily executes and delivers a valid assignment of his wages, with knowledge that he will be discharged if his employer learns of such assignment, may not recover damages of the assignment holder for loss of employment consequent on the act of the assignment holder in bringing said assignment to the attention of the employer, who thereupon discharges the employee. *One may not, ordinarily, voluntarily assent to a danger, and then, when the danger or damage becomes a fact, predicate action thereon.*

**TRIAL:** Instructions—Form, Requisites, and Sufficiency—Hyper- 5 critical Objections—Exemption of Wages. Instructions with reference to liability for assignment of claims with intent to

defeat the exemption rights of the debtor reviewed, and held not subject to the objection that thereunder plaintiff might recover even though the wages in question were not exempt under the laws of this state.

DAMAGES:   Exemplary Damages—Statutory Penalty.   Punitive damages for the violation of a statute may be recovered, even though the statute carries, as a matter of criminal law, its own penalty.   So held under the statute which prohibits assignments of claims with intent to defeat exemption rights.

EXEMPTIONS:   Protection and Enforcement—Unlawful Assignment of Claims—Exemplary Damages.   Exemplary damages are recoverable for the *malicious* assignment of claims with intent to deprive the debtor of his exemption rights.

EXEMPTIONS:   Protection and Enforcement—Unlawful Assignment of Claims—Malice—Evidence.   Whether an assignment of claims against a debtor with intent to deprive him of exemption rights was *malicious*, may be determined by due consideration of the circumstances attending the assignment.

DAMAGES:   Exemplary Damages—Disproportion Between Actual and Exemplary.   Juries possess no unbridled license in the assessment of exemplary damages.   Due regard must be had to the actual damages suffered, and to the gravity of the wrongful act, as reflected by the violated statute.   An allowance of $500 exemplary damages with $17 actual damages, for unlawful assignment of claims against a debtor. held excessive.

DAMAGES:   Exemplary Damages—Excessive Amounts Rectified Only by Reversal.   Principle recognized that unsustainable assessments of exemplary damages must be rectified by new trial, and not by partial remittitur.

*Appeal from Pottawattamie District Court.*—THOMAS AR-
THUR, Judge.

## JANUARY 11, 1918.

SUIT to recover damages, on the ground that defendants sent an obligation of the plaintiff to it out of the state of Iowa, with intent to deprive the plaintiff of the benefit of the Iowa exemption laws, and that such wrongful intent was accomplished by depriving the plaintiff of wages which could

not have been reached had suit been brought in Iowa. Plaintiff had a verdict for both actual and exemplary damages, and defendants appeal.—*Reversed and remanded.*

*George S. Wright* and *Addison G. Kistle,* for appellants.

*Thomas Q. Harrison* and *Killpack & Northrop,* for appellee.

SALINGER, J.—I. The plaintiff made notes to the defendants. They transferred the same, and suit thereon was brought in a Nebraska court, wherein judgment on the notes was entered. Without apparently making any issue of it, the plaintiff injected into an answer filed in the Nebraska court a statement that the transfer of the notes was in violation of a penal statute of Iowa, and was made with intent to wrongfully deprive the maker of the notes of the exemption laws of the state of Iowa. The appellant says that this allegation in answer bars the present suit of the plaintiff, because that rests upon a charge of the same wrong. But the Nebraska judgment creates no estoppel, unless it had occasion to determine whether the transfer was made with such intent. The naked fact that the original payee of notes had conspired to deprive the maker of exemption rights has no bearing upon whether his assignee may recover judgment upon the notes. Whether the notes had or had not been transferred with such intent, judgment was due on notes, the making and nonpayment of which were confessed. The plea of estoppel by adjudication is untenable, because no judgment can create an estoppel to relitigate matter which has no bearing upon whether such judgment should be entered. To be sure, the Nebraska judgment gave the process by which the exempt wages were seized. But no attempt was made to resist that sequestration. If having so resisted could create the estop-

1. JUDGMENT: conclusiveness: wholly immaterial matter.

pel now urged upon us, nonresistance is a sufficient answer.

II.   If the defendant transferred the
notes made them by plaintiff to a nonresi-
dent of Iowa with intent that action should
be brought in the courts of another state,
and judgment thereon should deprive the plaintiff of wages
which could not be seized had suit been brought in Iowa,
then the defendants violated a statute of this state which
makes the doing of these things punishable as a misdemean-
or.   The verdict, of necessity, declares that the statute had
been violated by the defendants.   We could not have inter-
fered had the jury found the contrary.   On the other hand,
we cannot agree with the appellant that there was no evi-
dence to support the finding made.

2. APPEAL AND.
   ERROR:  re-
   view : presump-
   tion :  sup-
   porting  fact.

### 2-a

Starting then, with the proposition that
the defendants violated this statute, that of
itself gave the plaintiff a cause of action
(Code of 1897, Section 3444; *Call v. Lara-
bee,* 60 Iowa 212; *Jones v. Register & Lead-
er Co.,* 177 Iowa 144), and the next step in the inquiry is
whether the wrong found caused actual loss.   The carrying
out of the transfer resulted in taking from the plaintiff $47
due him for wages which could not have been taken if suit
and seizure had not been instituted and made outside of
Iowa.   In other words, if judgment had been obtained in
Iowa, this $47 could not have been taken to pay the debt
of plaintiff.   It is urged by appellant, and in a broad sense
is true, that no loss is sustained by having one's property
applied in satisfaction of his debts.   See *Uppinghouse v.
Mundel,* (Ind.) 2 N. E. 719; Weeks, Damnum Absque Inju-
ria in Relation to Torts, 12; Cooley, Torts, *180 *et seq.* The
plaintiff is presumed to be solvent; and, if nothing appeared
upon that point, we should have to hold that seizing these
wages, as was done, if wrongful, yet caused no loss; because

3. EXEMPTIONS :
   protection
   and  enforce-
   ment :  send-
   ing  claims  out
   of  state :  dam-
   age.

the most it did was to cancel a debt of the plaintiff's with exempt money which could otherwise have been cancelled by seizing other of his property. But it does appear affirmatively that the plaintiff had no property other than his wages which could be applied to the satisfaction of his debts. Therefore, engaging in a plan which took these wages from him deprived him of exemption rights, and caused him a loss, though the sequestration paid a debt. If that be not so, the right to sue because a criminal act has been done, and the right to have wages exempt, are academic rights. That is to say, though it is a misdemeanor to make a wrongful seizure of exempt property, and though the commission of such misdemeanor gives a right of action, on the theory of appellant, the application of the thing seized to the payment of a debt,—the very thing the statute on exemptions prohibits,—accomplished by means which are criminal, would be a full defense to the commission of both wrongful acts: doing the wrong would cure the wrong. We think the wrongful act of the defendants found by the jury resulted in actual damages in $47, the amount of the wages seized.

2-b

The appellee claims he suffered further actual damages because both he and the defendants knew, when he gave his notes, that, if his employer was garnisheed, the plaintiff would be discharged from his employment; that being garnisheed caused the employer to discharge the plaintiff; that, though diligent in seeking other employment, he was unable to obtain it to any considerable extent; and that so, a further actual loss occurred. It suffices to say as to this that the record affirmatively shows plaintiff was not discharged because of the service of the garnishee process, but because he had made an assignment of his wages as security for the loan evidenced by his notes.

2-c

In an amendment to petition, the appel-
4. MASTER AND lee asserts that his discharge was caused
SERVANT: in-
terference because he made such assignment. And we
with relation:
procuring dis- think that this allegation is proved. But it
charge.
does not follow that this makes the defend-
ants responsible for loss occasioned by such discharge, if
any. In effect, the position of appellee on this head is that
he executed this assignment because it was demanded as
security; that both plaintiff and defendant knew that, if
such assignment became known to the employer, plaintiff
would be discharged; that the assignment, being of exempt
wages, was void because the wife of plaintiff did not join
therein; that, when the defendants transferred their notes,
they transferred therewith the said assignment; that, as
part of the plan involved in the transfer, such assignment
was brought to the notice of the employer; and that there-
fore the plaintiff was discharged. It might be said that the
rule of the employer concerning discharge because of an as-
signment of wages refers only to a valid assignment, and
that, when plaintiff claims the assignment was void, he
meets his own case, and demonstrates that such assignment
as was made did not cause his discharge. But we do not
care to place ourselves upon that ground, in view of the fact
that, valid or void, the employer thought it sufficient cause
for discharge. We confine the decision to the question
whether the execution of a valid assignment, and the bring-
ing of same to the notice of the employer by the defendants,
gave the plaintiff a right of action for loss due to the ensu-
ing discharge. The plaintiff was at liberty to borrow or
not to borrow. This carried with it the right to refuse
making the assignment. He chose to make it. He knew
that he gave it to secure his debt; he gave it so that the
debt might be satisfied out of the wages assigned. He knew
this could not be effected without advising the employer of

the existence of the assignment. Had the assignment been presented, though no transfer of the notes had been made, and though no suit had been instituted in Nebraska, its ef: fect upon his employment would have been just what it was in the actual case. So that, in the last analysis, the claim of the plaintiff at this point is that, because he gave a security which might lose him his employment if brought to the knowledge of his employer, the one who took the assignment is responsible for loss caused because the employer became advised of such assignment. It was no wrong to take the assignment; it was no wrong to advise the employer of its existence. If it was a wrong, it was as much the act of the plaintiff as of the defendant, and he may not recover on this account, under the maxim *volenti non fit injuria.*

5. TRIAL: instructions: form, requisites, and sufficiency: hypercritical objections: exemption of wages.

III. One complaint is lodged against Instructions 4, 5, 6, and 8. In them, the court charged that, to recover actual damages, plaintiff must show that the money seized on the Nebraska process was, when seized, exempt to plaintiff under the laws of Iowa; show the notes were transferred with intent that action should be brought thereon in Nebraska, and thereby to deprive plaintiff of the benefit of the exemption laws of Iowa; that, to recover special damages, he must further show all these matters by a preponderance, and if he has so shown, will be entitled to recover such actual damages as he has suffered,—and if he has failed to show one or more of these matters, he cannot recover. The complaint is that this allows a recovery though the jury did not find that the money appropriated by the Nebraska process might have been reached by action in the courts of this state, were it not for its exemption laws. It seems clear that these instructions are not vulnerable to this objection.

Complaint is made of the third instruc-

6. DAMAGES: ex-
emplary dam-
ages: stat-
utory penalty.

tion. In it the court set out a copy of the statute which makes it a misdemeanor to do certain acts in fraud of exemption rights. The quotation ended with the phrase, "shall be guilty of a misdemeanor and punished." The statute itself adds to this the words, "by a fine of not less than ten or more than fifty dollars." The exact complaint is that, by stopping where the court did, and not adding what the fine was, there was "impressed upon the jury far too greatly the idea that they were to punish defendants," and not impressed that the statute was a penal one, which provided for a public prosecution with a specific penalty. We gather the basic idea to be that the jury should in some way have been made to understand that the statute penalty was the only penalty. The complaint means little unless it is that, because there was a statute penalty, punitive damages cannot be allowed. If that be the theory, we cannot adopt it. We think there was no error here.

The same complaint is lodged against Instruction 10, and the further one that it allows the consideration of matters as actual damages which are too remote, and are not the proximate result of an act by the defendants, but the result of an independent act by persons whose acts do not bind the defendants. The instruction charges that, if it appears that the money garnished was exempt, and that, in selling the notes, the buyer was actuated with intent, etc., then plaintiff will be entitled to recover such actual damages as have been suffered by him, not to exceed $47, the amount seized on the process. We think the objection is not well made.

7. EXEMPTIONS:
protection and
enforcement:
unlawful as-
signment of
claims: ex-
emplary dam-
ages.

Instruction 11 charges that plaintiff might recover punitive or exemplary damages if the act of selling the notes was not only wrongful and unlawful, but malicious, as well. The complaint is that this allows

the jury to give exemplary damages based on malice, which is not the punishment provided by statute prohibiting a transfer with intent to defeat exempt rights; that there is no evidence of any malice; and that exemplary damages are not allowed "in cases of this kind." We have to say that the jury had enough to sustain a finding that defendants were actuated by such malice as the law contemplates, and that we know of no reason why the general rules on punitive damages should not be applied "in cases of this kind."

8. EXEMPTIONS: protection and enforcement: unlawful assignment of claims: malice: evidence.

Instruction 12 defines malice, as we view it, as all the authorities do, and we cannot sustain the claim that malice was improperly defined. So of the further objection that the jury was permitted to consider the selling of the notes on the question of malice, "in an action of this kind." We think the jury had the right to consider the sale and the circumstances under which the notes were sold, in arriving at whether legal malice existed.

As we view them, none of the authorities ·presented by appellant condemn these instructions. In *Brown v. Allen*, 35 Iowa 306, 311 (trespass for removing a quantity of corn), we held faulty an instruction that, if entry and detention be unlawful, the law will presume that these were wilful and malicious. *Inman v. Ball*, 65 Iowa 543, 546 (conversion of goods), reviewed an instruction stating that, if one knows an act is wrongful, then such act is, as matter of law, wilful and malicious. It is held that exemplary damages may only be had for a wilful or malicious wrong, an act done with purpose or intent to harass, oppress, or injure, and that the instruction in review made a finding of malice possible where there had been nothing but a mere mistake or blunder. *Curl v. Chicago, R. I. & P. R. Co.*, 63 Iowa 417, reverses for an instruction that the wilful use of

unnecessary force in ejecting a passenger will, without more, base exemplary damages. In *Irwin v. Yeager,* 74 Iowa 174, at 178, it was an instruction which permitted a jury to allow exemplary damages without finding that the act complained of was maliciously done. *The Santa Rita,* 173 Fed. 413, does not turn upon when exemplary damages may be allowed, but holds that, though there be a violation of a penal statute, this will not warrant a recovery for any injury that was not the proximate result of such violation.

IV. We cannot see the applicability of

9. DAMAGES: exemplary damages: disproportion between actual and exemplary.

*Kuhn v. Chicago, M. & St. P. R. Co.,* 74 Iowa 137, and *Schwartz v. Davis & Co.,* 90 Iowa 324. They decide that, where there is no more than a right to nominal damages, exemplary damages cannot be allowed. We have settled that the jury was warranted in awarding actual damages. The actual damages found are $47. In another place, we have said that we cannot interfere with this finding. If defendants had, immediately after seizing these wages, paid the plaintiff $47, he would have sustained no damages. Had the defendants been convicted of the violation of the statute involved, the punishment would have been a fine of not less than $10 nor more than $50. This penalty may fairly be said to be an indication that the legislature did not consider the offense in question a heinous one. Yet the court permitted a verdict of $500 exemplary damages to stand against a motion for a new trial asserting that the damages are excessive and show prejudice and passion. In this we

10. DAMAGES: exemplary damages: excessive amounts rectified only by reversal.

think there was error; and, under the decisions of this court, this error should be cured by granting a new trial, rather than by a remission here. For this position, and for the holding that the damages are excessive, and show passion and prejudice, a mere citation of some of our decisions is sufficient. .See *Saunders v. Mul-*

*len*, 66 Iowa 728 (malicious levy), wherein we set aside a verdict where the actual damages were $50 and the punitive ones $650; *Ahrens v. Fenton*, 138 Iowa 559, where the actual damages were $38 and the exemplary damages $800. In *Cain v. Osler*, 168 Iowa 59, 68, we hold that, where the exemplary damages appear to be excessive, setting aside, and not remittitur, is the remedy.

V.   It is complained the court failed to set aside the verdict of the jury against the defendant Edwin D. Baith, after the action against him had been dismissed by the plaintiff, and erred in rendering judgment against said Baith upon such verdict. We find no judgment against anybody in the record, and this appeal would have been dismissed for want of jurisdiction, if the notice of appeal, after reciting an appeal from the judgment, had not also set forth that appeal was taken from the overruling of the motion for new trial. Neither do we find that any verdict went against Baith. The only verdict submitted was one finding for the plaintiff, without naming any defendant, and another, finding for the defendant M. S. Welker & Co. The complaint does not seem to be well founded.

For the error in overruling the complaint, in the motion for new trial, that the verdict was excessive, the judgment must be—*Reversed and remanded.*

If appellee will remit all but the actual damages, the judgment will stand affirmed at the cost of appellant, if election be made within 30 days from the filing of this opinion.

PRESTON, C. J., LADD, EVANS, and GAYNOR, JJ., concur.