JAMES L. HARTMAN et ux., appellees, v. C. R. PETERSON, appellant.

No. 48558.

(Reported in 66 N.W.2d 849)

NOVEMBER 16, 1954.

Raymond E. Hanke, of Des Moines, for appellant.

Wilbur J. Bridges and S. David Peshkin, both of Des Moines, for appellees.

BLISS, J.—On February 14, 1952, by written contract duly recorded April 21, 1952, defendant and wife sold a Des Moines suburban residence property, known as 4944 Urbandale Avenue,

to Joe F. Lavia and wife, for a consideration of $13,950, with a cash down payment, and the balance of the purchase price payable in monthly installments beginning March 1, 1952. The contract contained the usual forfeiture clause. The purchasers promptly took possession of the property and occupied it until about September 3, 1952. At that time they were in arrears $797 in their payments. Defendant had not begun forfeiture proceedings.

In the last week of August 1952 plaintiffs had sold their home and were planning to build a new one and desired a temporary home until the new one was completed. On Labor Day, Monday, September 1, 1952, Mr. Hartman contacted Joe Lavia, who was still living at 4944 Urbandale, and they entered into a verbal lease for the occupancy of that place for three months, or more if needed, by plaintiffs and their three children, four years, two and one-half years, and six months old, at a rental of $125 a month. Mr. Hartman paid Mr. Lavia $50 on the first month's rent, and on Wednesday, September 3, the day Lavia moved out, he paid the $75 balance of the first month's rent, and it was agreed the rent was paid from Friday, September 5 to October 5, 1952, and that plaintiffs could move in on Thursday, September 4. Mr. Lavia gave Mr. Hartman the key to the house, but he had no key to the garage.

On Thursday, September 4, plaintiffs with their car and trailer began moving in. They brought the family clothing, kitchen utensils, canned goods, the baby's bed and play-pen, Mr. Hartman's tools, his X-ray film and supplies, and some of his employer's supplies. They spent the day house cleaning, putting new paper on the shelves, putting clothes in the closets, utensils and canned food in the cabinets, and set up the baby's bed and pen. They were still working at nine o'clock that night when there was a knock at the back door, and defendant, who was a stranger to them, walked in and asked them what they were doing. When plaintiffs told him they rented the place for three months and were moving in, defendant informed them that he had title to the property and that they could not occupy it, and that if they did not move out he would have "the law" or the police put them out. When Mr. Hartman told defendant he was going to find out what his rights were, the defendant left the

place. Plaintiffs then locked the windows and doors and went home and Mr. Hartman at once consulted his lawyer who told him that he had rightful possession of the place and that he was entitled to move his household property therein and to occupy it.

Defendant did not consult his lawyer that night, but after plaintiffs had left the property, defendant returned to it, entered the house and replaced the locks in the doors with different locks, nailed a basement window shut, which could not be locked, and then locked the doors. Defendant then posted two notices on the house. One stated: "Locks have been changed. To get in, contact C. R. Peterson, licensed broker 3100 Beaver Avenue, Des Moines, Iowa, phone 7-4362." The other notice recited: "This place under foreclosure, please contact George Flagg, attorney."

The next morning, Friday, September 5, about 10:15, plaintiffs and their three children, and a moving van with the remainder of their household goods arrived at the Urbandale house and were unable to get in because of the changed door locks. They could not get in contact with the defendant in the forenoon. Defendant appeared at the place about one o'clock. He also had counseled with a lawyer who had prepared an agreement providing that if plaintiffs would release defendant from liability for dispossessing them they might occupy the property for a month for the rent they had paid. As testified by defendant, the lawyer thus advised him: "If he [plaintiff] will sign it, fine, and if he won't, let him in anyway." Defendant testified: "When he showed the paper in question to Mr. Hartman the latter checked it over and read it and mumbled something about 'Well, I don't know if I want the place now.' That he [Hartman] was pretty angry at the time and the conversation that he had with him was in pretty loud words and could be heard for quite some distance. That he, Peterson, was angry and did not attach any conditions to his offer to allow him to move in. That Hartman never did demand the $125 from him." Plaintiffs did not sign the release. A friend of plaintiffs appeared on the scene and offered plaintiffs the privilege of taking the family and household goods to his home.

About three o'clock in the afternoon defendant or his daughter opened the garage door, and Mr. Hartman and his

friend and the moving men carried all of plaintiffs' household property out of the house and loaded it into the van. It was then taken to the friend's home and stored in the basement about 6:30 that evening. Sunday afternoon plaintiffs moved to a temporary location.

On November 21, 1952, plaintiffs filed their petition alleging in substance the matters stated above, and that because thereof Mrs. Helen A. Hartman, who had been recuperating from poliomyelitis and was naturally nervous with her three small children with her at the time, suffered nervous shock, mental anguish and other injuries. Judgment for $4000 was prayed. Later, by amendment, at the close of plaintiffs' testimony to conform to proof, it was alleged that by reason of the wrongful, malicious and willful eviction James L. Hartman lost time from his business and was forced to incur additional expense for storage of part of his furnishings and equipment and suffered severe nervous shock and mental anguish. The prayer was amended to ask judgment for James L. Hartman for $1000 for actual damages and for $1000 exemplary damages and for like damages for Helen A. Hartman. The jury returned a verdict of $100 as actual damages for Mrs. Hartman, and a verdict of $1000 actual, and $1000 exemplary, damages for James L. Hartman.

There was testimony by Mr. Hartman that his wife "became very upset" over defendant's conduct. For defendant, a lady who lived next door to the Urbandale property, testified that she talked with Mrs. Hartman during the difficulty with defendant on Friday, September 5, and learned from her of her recovery from polio and that she was feeling fine, and "that during the time she talked to Mrs. Hartman she seemed to be concerned, but apparently, no more than anyone else would under the same circumstances, that, as a matter of fact, Mr. Hartman seemed to be more excited than she was." Mrs. Hartman testified to no ill effects of any kind from what had taken place.

Mr. Hartman testified that his average daily compensation was $25 and expenses and that he lost perhaps a day or a day and a half because of defendant's actions. The only evidence respecting any nervous shock or mental anguish suffered by him was his testimony that on Friday, September 5, he "was perturbed that morning, but that he rarely got angry or excited, and

that he wasn't greatly excited on this particular occasion." He testified that Mr. Lavia, on Saturday morning, September 6, "offered to refund all of the money which he had paid him for rent, and that he did not take it because he [Hartman] asked him for time to consult with his attorney." He said the rent money which he paid to Mr. Lavia was never returned.

The driver of the van was a witness for plaintiffs. He testified "that he saw Mr. Hartman during all of that time (from one to four o'clock Friday afternoon), or at least part of that time, and he did not seem to be nervous or anything, nor was he excited. That he talked to Mrs. Hartman there and she, perhaps, was a little nervous."

The manager of the van company testified that the charges of his company were increased $40.67 because of the delay caused by defendant.

Defendant satisfied the judgment in favor of Helen A. Hartman by paying $100 to the Clerk of the District Court of Polk County, before filing notice of appeal. The appeal was only from the judgment in favor of James L. Hartman. Appellant's attorney on this appeal did not participate in the trial.

I. It is the conclusion of this court that the evidence of the time lost and the expense incurred by Mr. Hartman together with the perturbation of his feelings and sensibilities does not justify the allowance by the jury of $1000 as actual damages. It is more than compensatory. It is excessive. Certain circumstances appearing in the record may well have engendered an attitude of resentment in the jury which developed a feeling of passion and prejudice that was given expression in the awards of both the actual, and the exemplary or punitive, damages. If it were a matter only of the actual or compensatory damages we might fix a reduction therein which would be optional with plaintiffs to accept, or to refuse and thereby suffer a reversal. But such procedure is beyond the authority of this court with respect to the punitive damages. We have many times said that the award of such damages and the determination of the amount thereof are "peculiarly" the province and the function of the jury, and when the amount has been fixed by the verdict it is beyond the authority of this court to increase or to diminish it. But where the allowance of such damages, or the amount thereof is

so excessive, or so disproportionate to the actual damages sustained, that passion or prejudice fairly appears to have been an inducing cause thereof, this court may set aside the judgment and grant a new trial. Under the record the allowance, and the amount, of actual and compensatory damages were questions of fact for the jury. The evidence was also such that it was within the sound discretion of the jury, but not as a right of plaintiffs, to allow or to disallow, exemplary or punitive damages. It is our conclusion that the award of $1000 to James L. Hartman as exemplary damages is so excessive and out of reasonable proportion to the actual damages sustained by him as to establish passion and prejudice on the part of the jury vitiating the entire verdict and judgment in his favor. This so manifestly and irresistibly appears that we have no other alternative than to set the judgment aside. Sadler v. Bean, 38 Iowa 684, 685; Saunders v. Mullen, 66 Iowa 728, 729, 24 N.W. 529; Soesbe v. Lines, 180 Iowa 943, 948, 164 N.W. 129; Vowles v. Yakish, 191 Iowa 368, 376, 179 N.W. 117, 13 A.L.R. 1132; Ahrens v. Fenton, 138 Iowa 559, 562, 115 N.W. 233; Jolly v. Doolittle, 169 Iowa 658, 665, 666, 149 N.W. 890; Cain v. Osler, 168 Iowa 59, 67, 68, 150 N.W. 17, Ann. Cas. 1918C 1126; Wildeboer v. Petersen, 182 Iowa 1185, 1188, 166 N.W. 464; Waltham Piano Co. v. Freeman, 159 Iowa 567, 571, 141 N.W. 403; Crum v. Walker, 241 Iowa 1173, 1181, 1182, 44 N.W.2d 701; Puls v. Powelson, 142 Iowa 604–607, 121 N.W.1; Sebastian v. Wood, 246 Iowa 94, 66 N.W.2d 841.

The judgment is therefore—Reversed and remanded.

All JUSTICES concur.