**BANKERS LIFE & CASUALTY COMPANY, Appellant,**

v.

**C. M. KIRTLEY, Trustee in Corporate Reorganization Proceedings of Automatic Washer Company, Appellee.**

No. 16930.

United States Court of Appeals
Eighth Circuit.

Aug. 24, 1962.

---

Vogel, Circuit Judge, dissented in part.

**420**

S. David Peshkin, of Bridges & Peshkin, and Wendell B. Gibson, of Gibson, Stewart & Garrett, Des Moines, Iowa, made argument for appellant and filed brief.

Howard A. Steele, of Bradshaw, Fowler, Procter & Fairgrave, Des Moines, Iowa, made argument for appellee and W. Z. Proctor and H. M. Coggeshall, Des Moines, Iowa, with him on the brief.

Before VOGEL, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by Bankers Life & Casualty Company, hereinafter called Bankers, from a judgment entered against it based upon a jury verdict for $1,056,250. Of this amount, $406,250 was for compensatory damages and $650,000 was for exemplary damages.

The plaintiff is trustee of Automatic Washer Company by virtue of appointment made on November 2, 1956, in a corporate reorganization proceeding under Chapter X of the National Bankruptcy Act pending in the United States District Court for the Southern District of Iowa.

Automatic Washer Company is a Delaware corporation with its principal place of business at Newton, Iowa. Like the parties, we will refer to the plaintiff and the corporation for which he is acting as Automatic. Bankers is an Illinois corporation with its principal place of business at Chicago, Illinois. It is engaged in the insurance business and is authorized to transact business in Iowa. Jurisdiction, based upon diversity of citizenship, is established.

The pertinent facts and issues are well summarized in an opinion by Judge Stephenson, reported at 198 F.Supp. 30. In his opinion, Judge Stephenson sets forth the reasons why he believes that Bankers' motions for judgment n. o. v. and for a new trial should be overruled. We adopt the trial court's statement of the facts and issues as set forth in that opinion.

The theory underlying Automatic's cause of action is that Bankers, after becoming the dominant stockholder of Automatic in May of 1956, wrongfully caused Automatic to acquire from the Martin Development Corporation a $225,000 note of Schuster Oil and Gas Corporation, secured by a mortgage upon its oil holdings and other assets, in exchange for 25,000 shares of Bellanca stock owned by Automatic. It is alleged that such stock was worth $500,000 and that the note and mortgage acquired therefor was worth only $50,000.

Bankers denies it had any part in inducing Automatic to purchase the Schuster note and mortgage; denies any fraud or unfair dealing upon its part; and further asserts that the note and mortgage were worth more than the Bellanca stock given therefor.

The jury found against Bankers upon all of such issues and in answer to an interrogatory specifically determined that Bankers did cause Automatic to enter into the purchase of the Schuster note and mortgage as alleged.

Bankers, at the close of plaintiff's evidence and again at the close of all the evidence, made appropriate motions for directed verdict and after an adverse verdict, made motion for judgment n. o. v. upon the basis of the grounds urged in

its motion for directed verdict, and also made a motion for a new trial based upon the excessiveness of the verdict. All of such motions were overruled. This timely appeal followed.

Bankers asserts it is entitled to a reversal for the following reasons:

"I.

"The Court erred in denying the appellant's motion for a directed verdict and/or new trial in that the Court failed to observe and apply the rules that should be followed in ruling upon a motion for a directed verdict.

"II.

"The Court erred in denying the appellant's motion for a directed verdict and/or new trial in that the record and evidence were insufficient to warrant submission of the case to the Jury on the issue that Bankers (appellant) defrauded Automatic (appellee) by causing the exchange of 25,000 shares of Bellanca stock for a $225,000.00 note and mortgage executed by Schuster Gas & Oil Corporation and payable to Martin Development Corporation.

"III.

"The Court erred in denying the appellant's motion for a directed verdict and/or new trial in that the record and evidence were insufficient to warrant submission of the case to the jury on the issue of compensatory damages for the reason that all evidence submitted by the plaintiff on this point was based on mere conjecture and speculation.

"IV.

"The Court erred in denying the appellant's motion for a directed verdict and/or new trial in that the record and evidence were insufficient to warrant submission of the case to the Jury on the issue of exemplary damages. Furthermore, even if there was a basis for such a finding for exemplary damages, the amount of the exemplary damages assessed by the Jury was confiscatory, grossly excessive and passion and prejudice fairly appears to have been an inducing cause thereof."

The first three errors asserted are closely related and will be considered together. They challenge the sufficiency of the evidence to support any judgment in favor of Automatic. There is some question whether the sufficiency of the evidence to support a verdict must be tested by federal standards or by Iowa standards. Bankers contends Iowa standards should prevail, while Automatic urges that federal tests should be applied, but states that no difference exists between the Iowa and federal rules upon the issues here in controversy. The question of whether, in a diversity case, state or federal rules should apply on the question of determining the sufficiency of evidence to support the verdict has not been settled by the Supreme Court. Dick v. New York Life Ins. Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935; Ford Motor Co. v. Mondragon, 8 Cir., 271 F.2d 342, 345.

In the Ford case, we examined both the Iowa and the federal law on the question of sufficiency of circumstantial evidence to support a verdict and reached a conclusion that no material difference existed in the tests applied. We there stated:

"The Iowa rule with reference to the test of the sufficiency of circumstantial evidence to support a verdict has been liberalized in recent years. Iowa has abandoned the 'exclusion of every other hypothesis rule' and now follows the 'more reasonably probable rule.' Soreide v. Vilas & Co., 247 Iowa 1139, 78 N.W. 2d 41, 43; Bokhoven v. Hull, 247 Iowa 604, 75 N.W.2d 225, 227; Little v. Watkins Motor Lines, 8 Cir., 256 F.2d 145, 149; Guyer v. Elger, 8 Cir., 216 F.2d 537, 539. The federal cases just cited involve the Iowa law. In the Bokhoven case, the court states (75 N.W.2d at page 227):

" ' * * * we are firmly committed to the rule that plaintiff's theory of

**422**

causation need not be proved by evidence so clear as to exclude every other possible theory. The evidence must be such as to make that theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence * * *.'

"It would appear that the test of the sufficiency of circumstantial evidence under federal law would be substantially the same." 271 F.2d 345.

 Automatic in its brief thus states the test to be applied in determining the sufficiency of the evidence to support the verdict:

"No doubt a case should not be submitted to a jury unless the evidence would sustain a verdict in plaintiff's favor; a mere scintilla of evidence will not support a verdict; and the burden of proof is on plaintiff. In cases involving an intent to defraud, the Courts, both state and federal, have often said that fraud is not presumed; that the evidence must be clear and convincing; and that a mere preponderance is not sufficient."

Bankers agrees that such is a proper statement of the test.

 In determining the sufficiency of the evidence to support the verdict, we must view the evidence in the light most favorable to the prevailing party, giving such party the benefit of all inferences that may reasonably be drawn from the evidence. Ford Motor Co. v. Mondragon, supra; Clinton Foods, Inc. v. Youngs, 8 Cir., 266 F.2d 116.

 Responsibility for resolving doubtful issues of fact rests upon the jury. We are not authorized to try a case de novo and to substitute our judgment for that of the fact-finder. Factual determinations of the jury cannot be upset if they are supported by substantial evidence. Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 8 Cir., 295 F.2d 223, 227; Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859,

860; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136.

 It is true, as asserted by Bankers, that it has introduced in support of its contentions direct evidence of Automatic's former president Chamberlin and of Mr. Little, Bankers' former vice-president, which has not been directly contradicted. The question of the credibility of witnesses and the weight to be given testimony is for the jury. The jury is not compelled to accept as true the testimony of any witness. Powers v. Continental Casualty Co., 8 Cir., 301 F.2d 386, 388; Noland v. Buffalo Ins. Co., 8 Cir., 181 F.2d 735, 738; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440.

 The record in this case is quite lengthy and complicated. The parties are familiar with the testimony. No useful purpose would be served by prolonging this opinion with a detailed discussion of the conflicting evidence. We have very carefully considered the entire record. Our examination of the evidence satisfies us, as it did the able trial court, that there is substantial evidence to support the verdict of the jury on the issue of liability as well as upon the compensatory damage issue. Thus the court committed no error in overruling Bankers' motions for directed verdict and for judgment n. o. v.

This leaves for consideration point IV attacking the award of punitive damages. The attack is twofold. Bankers urges that there is no evidentiary basis to warrant the submission of the exemplary damage issue to the jury, and additionally contends that if the exemplary damage issue is entitled to be considered by the jury, Bankers is entitled to a new trial upon the ground that the verdict is confiscatory and excessive.

 The trial court, at pages 33–34 of 198 F.Supp., cites and discusses Iowa cases relating to the propriety of awarding exemplary damages in the factual situation here presented. We are satisfied that Bankers has failed to demonstrate that the trial court did not reach a permissible conclusion on the basis of Iowa

law in its determination that the submission of the exemplary damage issue was warranted. See Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734; Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., supra.

We now pass to the troublesome question of the excessiveness of the exemplary damages award. While the motion for new trial includes a general statement that the damages awarded are excessive, Bankers in its brief limits its attack on compensatory damages to the claim that there is no evidence to support any compensatory damages. In any event, while the actual damages awarded may be liberal, we are satisfied that such damages have evidentiary support and no abuse of discretion exists in the trial court's refusal to grant a new trial as to compensatory damages.

■ The question arises whether we have any power to review the trial court's determination that a new trial should not be granted by reason of excessive exemplary damages. Judge Blackmun recently very ably reviewed our position on our power to review the award of excessive damages in Solomon Dehydrating Co. v. Guyton, 8 Cir., 294 F.2d 439, 446–448. We adhere to the view stated in that case that we can no longer refuse to review the excessiveness of a verdict under all circumstances. As pointed out by Judge Blackmun, all other circuits now recognize that the Seventh Amendment does not deprive an appellate court of power to review for abuse of discretion the order of the trial court passing upon a motion for new trial, based upon an excessiveness or inadequacy of a jury verdict. See Dagnello v. Long Island R. R. Co., 2 Cir., 289 F.2d 797, for a good discussion of this question.

In the Solomon Dehydrating Co. case we stated:

"We do emphasize again, however, that in our opinion, inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of ob-serving the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result." 294 F.2d 447–448.

In National Food Stores, Inc. v. Utley, 8 Cir., 303 F.2d 284, we stated:

"The duty and responsibility of keeping damages within reasonable bounds must, however, in the interest of orderly administration of justice, remain primarily with the trial judge."

■ We firmly believe that a large degree of discretion is vested in the trial judge in determining whether a new trial should be awarded and that the action of the trial court upon a motion for new trial should be upset only upon a strong showing of abuse of discretion.

■ Solomon and the cases cited deal with compensatory damages. We believe such cases constitute authority governing the review of exemplary damage awards. The standard for review of exemplary damages should be at least as narrow as that applied to compensatory damage situations.

We now reach the question of whether the $650,000 award of exemplary damages by the jury results in a plain injustice or whether it is monstrous or shocking.

In National Food Stores, Inc., we observed:

"It is important in diversity cases such as this that the damages awarded by a federal court jury shall not exceed those which could be sustained, were the case before the Supreme Court of the state."

See also Garland Coal & Mining Co. v. Few, 10 Cir., 267 F.2d 785; Kelite Products, Inc. v. Binzel, 5 Cir., 224 F.2d 131, 145.

 We agree with Judge Stephenson's view that no hard and fast rule has been formulated by the Iowa court for measuring a verdict for exemplary damages for excessiveness. The cases in Iowa and generally appear to indicate that because of the nature of the problem presented, no precise standard can be laid down. We believe that Judge Stephenson properly summarizes the applicable Iowa law in his opinion, as follows:

"The Iowa Court has stated many times that the assessment of exemplary damages is peculiarly within the discretion of the jury. E. g. Gregory v. Sorenson, 1932, 214 Iowa 1374, 242 N.W. 91; Brause v. Brause, 1920, 190 Iowa 329, 177 N.W. 65. However, this discretion is not unlimited. In deciding whether the verdict was so excessive as to show passion and prejudice on the part of the jury, the Iowa Court has stated, 'The test is, not what amount the court would have allowed, but whether the verdict is so large or small, as the case may be, as to shock the conscience.' Brause v. Brause, supra, 190 Iowa at page 337, 177 N.W. at page 68. This test of 'conscionableness' has been most recently reiterated in Sergeant v. Watson Bros. Transp., supra, 244 Iowa at page 199, 52 N.W.2d at page 94." 198 F.Supp. 35.

Our study of the Iowa cases shows that the Iowa court has on a number of occasions reversed an award of exemplary damages on the ground that it was excessive. See Hartman v. Peterson, 246 Iowa 41, 66 N.W.2d 849 (wrongful dispossession, $1000 actual damages, $1000 exemplary); Sergeant v. Watson Bros. Transp. Co., 244 Iowa 185, 52 N.W.2d 86 (false imprisonment, $6500 actual damages, $6500 punitive); Crum v. Walker, 241 Iowa 1173, 44 N.W.2d 701 (assault and battery, $1500 actual damages and

$2500 exemplary); Vowles v. Yakish, 191 Iowa 368, 179 N.W. 117, 13 A.L.R. 1132 (defamation, $5000, likely mostly exemplary); Wildeboar v. Petersen, 182 Iowa 1185, 166 N.W. 464 (rape, $150 actual, $5000 exemplary); Manning v. Meade, 180 Iowa 932, 164 N.W. 113 (defamation, $2500, likely largely exemplary); Jolly v. Doolittle, 169 Iowa 658, 149 N.W. 890 (assault and battery, $1500, which was assumed to be largely exemplary).

The largest exemplary damage verdicts approved by the Iowa Court which have come to our attention are $6000 exemplary damages in a seduction case, Reutkemeier v. Nolte, 179 Iowa 342, 161 N.W. 290, L.R.A.1917D, 273, and $5000 in a wrongful attachment case, Union Mill Co. v. Prenzler, 100 Iowa 540, 69 N.W. 876.

Cases passing upon exemplary damage awards which were asserted to be excessive in various tort situations are collected and discussed in the following annotations: 31 A.L.R.2d 713, 35 A.L.R.2d 218, 35 A.L.R.2d 273, 35 A.L.R.2d 308, 36 A.L.R.2d 548, and 62 A.L.R.2d 839.

The largest exemplary damage verdict coming to our attention which has been sustained is $175,000 in a libel case based on New York law, $100,000 of which was against the author, the balance being against the publisher and distributor. Reynolds v. Pegler, 2d Cir., 223 F.2d 429.

The Iowa cases heretofore cited and those discussed in the A.L.R. Annotations reflect that courts have frequently reversed exemplary damage awards when they found the result to be shocking or to constitute a miscarriage of justice, although it is recognized that a large degree of discretion is vested in the jury in determining the amount of exemplary damages and that the verdict and the trial court's denial of a motion for new trial should be upset only in exceptional situations.

 Our initial reaction to the $650,-000 verdict for exemplary damages was that it is so large as to shock the conscience. Our study of the cases in Iowa and elsewhere and a comparison of this

verdict with other verdicts have strengthened our conviction that the verdict is shocking.

Our conclusion is not based upon any thought that the exemplary damages are disproportionate to the actual damages awarded. In some instances, verdicts have been upset on the basis that the exemplary damages are disproportionate to the actual damages. However, as stated by the trial court, the proportionate test is not a conclusive test. Rather, it is one of a number of tests that may be applied.

Automatic argues that the wealth of the defendant justifies the amount of the exemplary damage award. There is respectable authority to the effect that the wealth of the defendant is a factor to consider in an award of exemplary damages. 4 Restatement, Torts, § 908(2). There is evidence that Bankers dealt in rather large transactions and one witness stated that Bankers is "a pretty good-sized company". However, there is no reliable information in the form of a balance sheet or otherwise as to the value of the stock ownership in Bankers. Manifestly, much of its assets are required for policy reserves for the protection of its policy holders. Moreover, it is apparent from the record here that the value of the ownership equity will be reduced by the judgment Bellanca obtained against Bankers for $1,250,000 for 500,000 shares of Automatic stock. See Bankers Life & Casualty Co. v. Bellanca Corp., 7 Cir., 288 F.2d 784. The record with respect to Bankers' financial status is not such as to justify the extremely large award of exemplary damages.

Bankers did not realize any profit on the transactions here in question. It is true that the jury would be warranted in finding that Bankers had hope of realizing a profit by reason of an arrangement under which its subsidiary, Illamex, was to purchase 492,500 shares of Automatic stock to be issued to Schuster for $250,000. Such deal was contingent upon the approval of the issuance of the stock by the Midwest Stock Exchange, which approval was never obtained. Thus, the verdict cannot be justified upon the basis of taking away from Bankers any ill-gotten profits.

A full and careful consideration of all the evidence leads us to a firm conclusion that the $650,000 exemplary damage verdict is shocking and that it constitutes a miscarriage of justice.

■ While in some jurisdictions excessive exemplary damages have been reduced by remittitur, the Iowa court takes a firm position that an excessive exemplary damage award cannot be cured by remittitur. Hartman v. Peterson, supra; Sergeant v. Watson Bros. Transp. Co., supra; Ahrens v. Fenton, 138 Iowa 559, 115 N.W. 233. In the Hartman case, the court states:

> "We have many times said that the award of such damages, and the determination of the amount thereof, are 'peculiarly' the province and the function of the jury, and when the amount has been fixed by the verdict, it is beyond the authority of this court to increase, or to diminish it. But where the allowance of such damages, or the amount thereof is so excessive, or so disproportionate to the actual damages sustained, that passion or prejudice fairly appears to have been an inducing cause thereof, this court may set aside the judgment, and grant a new trial." 66 N.W.2d 852.

To the extent that the Iowa law controls, it seems clear that an excessive award of exemplary damages cannot be cured by remittitur. In jurisdictions where remittitur is used, courts have great difficulty in determining what standard should govern in fixing the amount that will be allowed. See 6 Moore, § 5905(3), p. 3743-5.

■ We deem it unnecessary to determine whether under the circumstances here presented state or federal law controls in determining the means of correcting a verdict found to be excessive. We are satisfied that upon the record here the court should not attempt to cure

the excessive exemplary damage award by means of remittitur.

A close question is presented as to whether the passion and prejudice implied as to the excessive exemplary damage award would also vitiate the award of actual damages. In a great majority of cases, including those in Iowa, which have found excessiveness in the exemplary damage award a new trial has been granted upon all issues; that is, upon liability, compensatory and exemplary damages. In many situations a new trial upon all issues would be appropriate relief. In our present situation we believe that if a new trial is granted, it should be granted upon all issues. A close relationship here exists between the issues of liability and damages. See United Air Lines, Inc. v. Wiener, 9 Cir., 286 F.2d 302, 306; Gasoline Products Co., Inc. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188.

In some situations courts have found a basis for sustaining the actual damage award upon the condition that the exemplary damage award be remitted. In Haines v. M. S. Welker & Co., 182 Iowa 431, 165 N.W. 1027, the court found the exemplary damages to be excessive but gave plaintiff an election to remit exemplary damages, in which event the actual damages would be affirmed, or to have the case remanded for a new trial on all issues. In Taylor v. Williamson, 197 Iowa 88, 196 N.W. 713, the court upheld a partial remittitur of the general award for both actual and punitive damages; the court refused to infer that the verdict was the result of passion and prejudice merely because it was excessive.

The court itself ordered a partial remittitur of a general award in Manning v. Meade, 180 Iowa 932, 164 N.W. 113, because the case had already been retried once and the court thought it to be in the interest of the public and of the parties that the litigation come to an end.

In our present case, while the award of actual damages appears to be liberal, it is supported by substantial evidence. The weight to be given evidence is properly determined by the jury and as heretofore pointed out, defendant in its brief did not specifically raise the excessiveness of the actual damage award. Moreover, there is here no affirmative evidence other than the size of the exemplary damage award to indicate passion or prejudice on the part of the jury.

We believe that our present case is one of those exceptional cases in which justice would be served by sustaining the actual damage award upon condition that plaintiff elects to file remittitur of all exemplary damages. We recognize that the plaintiff is entitled to an award of exemplary damages for any amount a jury may fix which is not excessive. Under our disposition of the case, plaintiff may if he so elects have a new trial upon all issues, including the exemplary damage issue.

It is our conclusion that the award of compensatory damages should be affirmed upon condition that the plaintiff elects within 30 days from the filing of this opinion to file a remittitur for all exemplary damages. If plaintiff elects to file such remittitur, he shall file the same in the office of the clerk of the trial court and file a certified copy thereof together with proof of filing with this court. If remittitur is not so filed within the time fixed, the judgment will be reversed in its entirety and the case will stand remanded to the trial court for a new trial upon all issues, including liability, compensatory damages and exemplary damages.

VOGEL, Circuit Judge (concurring in part and dissenting in part).

I agree with all of the court's opinion herein with the exception of that part which holds that the " * * * exemplary damage verdict is shocking and that it constitutes a miscarriage of justice." This was an action for fraud. Large amounts were involved. Had Bankers been able to consummate its scheme, it would have acquired 492,500 shares of Automatic worth no less than $1,267,500 at a cost to Bankers of only

$250,000. [198 F.Supp. 30, 31, 35] Through Bankers' attempt to bring its fraudulent scheme to full fruition, Automatic was actually damaged to the extent of the difference in value between the 25,000 shares of Bellanca stock and the note and mortgage valued at approximately $65,000 but which eventually brought only $50,000 at a court-approved sale. There is almost the certainty of a mathematical basis for the compensatory damage verdict found by the jury and the court concedes that substantial evidence supports it. Appellants do not even claim here that it is excessive, although it amounts to more than $400,000. Nevertheless, the court finds that an exemplary damage verdict in the amount of $650,000 is shocking and a miscarriage of justice. Twelve jurors and an able and experienced trial judge who listened to the testimony and saw and heard the witnesses thought otherwise. I join them in their thinking.

The purpose of exemplary damages is to punish for misdoing and to deter the defendant from repetition and others from doing likewise. To constitute a punishment, the amount should be measured by the misdeed and tempered by the means of the defendant.[1] If the sum is not adjusted to the wrongdoer's ability to pay, it serves little use as either punishment or deterrent. Here the court finds that there was substantial evidence of a fraudulent scheme to wrongfully obtain over a million dollars and which scheme actually resulted in a loss to Automatic of over $400,000.[2] The court also finds that it was not error to submit the issue of exemplary damages to the jury; yet because the jury returned a verdict therein in the amount of $650,000 the court orders it remitted or grants a new trial. In other words, what the court does today is to tell Bankers that even if it is found on substantial evidence that it was guilty of fraud in raiding the financial pouch of Automatic to the extent of over $400,000, that all it has to do is pay it back and all will be forgiven. This is not punishment and it is not a deterrent. In fact, it is an invitation for Bankers or any other institution or person so minded to continue to do likewise, feeling secure in the conviction that they will probably escape punishment and there will be no deterring example. In other words, the hand that reaches into the till to pilfer must, if caught, merely drop that which it wrongfully attempted to withdraw. If the wrongdoer succeeds, he will unjustly gain. If he fails, he must only repay his ill-gotten wealth. Such a result would seem to justify the gamble, even encourage it. Here the amount of exemplary damages fixed by the jury bears a fair relationship to the compensatory damages. Its payment would mean a substantial punishment of Bankers for its fraud and it would stand as a strong deterrent to others who are like minded. I think the jurors indicated an uncommon amount of good sense and that they exercised the discretion which the law vests in them in an entirely proper and upright manner. I agree fully with the trial judge. This case should be affirmed in its entirety.

1. The court says, "The record with respect to Bankers' financial status is not such as to justify the extremely large award of exemplary damages." The record indicates that large sums were dealt in by Bankers and the various corporations, subsidiary and otherwise, involved in the scheme. There is every inference that Bankers is of such substantial financial stature as to force the conclusion that only a large amount would satisfy the requirements of punishment and deterrence.

2. Not long thereafter Automatic was forced into bankruptcy. We have no means of knowing whether the action of Bankers in this instance contributed toward that bankruptcy or no.